In re J.J., A Minor.

Appeal of J.J., Father, Appellant.

In re C.J., A Minor.

Appeal of J.J., Father, Appellant.

In re M.J., A Minor.

Appeal of J.J., Father, Appellant.

In re S.J., A Minor.

Appeal of J.J., Father, Appellant.

Superior Court of Pennsylvania.

Submitted March 4, 2013.

Filed June 24, 2013.

Benjamin N. Zuckerman, Pittsburgh, for appellant.

Robert W. Lykos, Pittsburgh, for appellees.

Alisa M. Lerman, Pittsburgh, for participating party.

BEFORE: BENDER, MUNDY, and STRASSBURGER *, JJ.

* Retired Senior Judge assigned to the Superior Court. Judge Strassburger did not participate in the consideration or decision of this case.

OPINION BY MUNDY, J.:

Appellant, J.J. (Father), appeals from the October 3, 2012 orders adjudicating as dependent, pursuant to 42 Pa.C.S.A. § 6302(1) of the Juvenile Act, his four children, C.J., a female, born in July 1997; J.J., a male, born in April 2003; and female twins, S.J. and M.J., born in March 2002, (collectively, the Children). In said orders, the trial court further directed that the Children were to remain in their kinship foster care placements with their kinship foster parents, who the trial court made their educational and medical decision makers at the pre-hearing conference. After careful review, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows.

> This matter was referred to the Allegheny County Office of Children, Youth and Families (CYF) on December 6, 2011. At that time, CYF learned that the four children were living with their mother when she died unexpectedly [in November of 2011]. The children's older sister, [E.R.,] moved into their home to care for them. She filed for custody on December 20, 2011 and Father appeared to contest. The court awarded custody to [E.R.] on an interim basis with Father having partial custody every other weekend and at such other times as the parties agreed. The matter was referred to Generations. [E.R.] and Father entered into an agreement whereby he was granted unsupervised custody every weekend. Father took advantage of only one weekend.

> [E.R.] was unable to care for the four children and made arrangements in July of 2012 to place them with maternal relatives. C.J. was placed with [the Children's maternal grandparents, E.S. and S.S.]. Twins M.J. and S.J. were placed with [the Children's maternal

aunt, L.S.]. J.J. was placed with [the Children's maternal aunt and uncle, P.G. and M.G.]

Trial Court Opinion, 12/12/12, at 1–2.

On August 16, 2012, CYF filed petitions seeking for the trial court to adjudicate the Children dependent. On September 4, 2012, the trial court held a pre-hearing conference, at which CYF presented its caseworker who is not identified in the transcript of the proceedings. Father appeared and testified, as did his wife, M.J. The guardian *ad litem* for the Children presented to the trial court letters written by two of the Children, S.J. and M.J. N.T., 9/24/12, at 26–27. The trial court heard, *in camera*, with all counsel present, the wishes of the Children as to their placement and visitation with Father.

Importantly, the caseworker testified that Father had visited the Children on only one weekend occasion, several months prior to the prehearing conference, pursuant to the custody order with E.R. that permitted Father unsupervised weekend visits. *Id.* at 9. Father explained that he had married M.J., who has four children who live with Father and M.J. *Id.* at 13. Father testified that he had not seen the Children since March 23, 2012, because they had been living with E.R., 40 or 50 miles away from his home, and he was having difficulty getting in touch with their caregivers. *Id.* at 14–15. Father requested visits with the Children, and indicated that he would desire for the Children to reside with him. *Id.* at 14. Father stated that he was willing to undergo an interactional evaluation with the Children. *Id.* On cross-examination, Father explained his lack of involvement in the Children's lives, stating that he had married M.J., and the Children's mother had not liked M.J. *Id.* at 15–16.

The trial court made the following factual findings based on the testimony at the

prehearing conference held on September 4, 2012.

There were no concerns with any of the caregivers. Foster parents and the [C]hildren wish to continue living together. Father was ordered to provide proof of domestic violence treatment, anger management treatment, and [to] undergo urine screening. A psychological evaluation of Father and the [C]hildren[,] and an interactional evaluation between both Father and [the] [C]hildren, and [E.R.] and the [C]hildren were ordered to aid in treatment and placement.

Trial Court Opinion, 12/12/12, at 2.

At the completion of the pre-conference hearing, the trial court ordered Father to undergo a drug and alcohol evaluation, and to provide proof of completion of the domestic violence/anger management classes which he claimed to have taken previously. *Id.* at 38. Because Father was unwilling to submit to a drug screen on the day of the pre-hearing conference, the trial court ordered that Father's visitation with the Children would be supervised. *Id.* At the request of the CYF caseworker, who was unidentified on the transcript, the trial court appointed the Children's caregivers as the medical and educational decision makers for the Children. *Id.* at 39–40. The trial court also directed that the Children undergo grief counseling because of the death of their Mother, and remain in their current placements. *Id.* at 38.

Subsequently, the trial court held a hearing on the petitions on October 2, 2012. At the hearing, CYF presented the testimony of Sonya Pass, the CYF caseworker assigned to the case, and Joe Zarenec, the caseworker from Second Chance assigned to the case. CYF also presented L.S., the Children's maternal aunt who is serving as the caregiver for M.J. and S.J.; M.G., who is the Children's maternal uncle,

through marriage, and is serving as the caregiver for J.J.; and E.S., the Children's maternal grandfather, who is the caregiver for C.J. Father failed to appear at the hearing, but his counsel appeared on his behalf.

The trial court made the following findings of fact from the testimony at the hearing.

All the children are doing well in current placement. The families see each other frequently so that the siblings have sufficient opportunity to be together. The current caregivers have education/medical guardianship over the children and are undergoing certification [as foster parents].

. . .

Father failed to appear at the hearing despite being notified twice by CYS. Sonya Pass, caseworker for CYS, testified that Father did not comply with any of the requirements set at the prehearing conference. He failed to provide proof of domestic abuse counseling or anger management treatment and he refused a urine screening. He did not appear for any of his scheduled appointments with Dr. O'Hara, the court appointed psychologist. The recommendation of CYS was for the [C]hildren to remain in current placement. [CYS further recommended that] [c]ustody for Father should not be considered until he provides information to the court regarding drug and alcohol treatment, domestic violence treatment and anger management treatment as ordered and submits to psychological evaluation.

Case worker, Joe Zarenec, testified that he had met with all the foster parents[,] who were all cooperative. They had nearly completed the [foster parent] certification process and there were no concerns whatsoever with the current placement. He was unable to reach Fa-

ther despite several attempts and Father had made no attempt to contact him. He recommended that Father attend the interactional [evaluation] and then participate in family therapy with the children.

[L.S.], maternal aunt and current foster parent for the twins, testified that the only time Father took the [C]hildren for a weekend, he returned them late and they missed a day of school. [M.G.,] wife [sic] of Mother's sister and foster parent for J.J., testified that Father has had virtually no contact with the children for at least ten years. [E.S.], maternal grandfather of the [C]hildren and foster parent for C.J., testified that the [C]hildren get together at his house two or three times each week. He has no contact with Father and raised custody concerns based on things C.J. told him. [S.J.], sibling of the [C]hildren, testified that she had personally witnessed Father abusing her mother by pushing her and punching her in the face. No objection was raised to this testimony.

Trial Court Opinion, 12/12/12, at 4–6. The trial court also found that Father had failed to participate in any supervised visits with the Children. *Id.* at 2.

In the October 3, 2012 orders, the trial court adjudicated the Children dependent, and continued them in their current foster home placements with their kinship foster parents, who the trial court had made their educational and medical decision makers at the pre-hearing conference. On November 2, 2012, Father filed timely notices of appeal with regard to the orders concerning the Children, along with concise statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[1]

On appeal, Father raises the following three issues.

[1.] Did the [t]rial [c]ourt misapply the law when it appointed an educational and medical decision maker for the children without a record to show [F]ather was unwilling or unavailable to maintain this role?

[2.] Did the [t]rial [c]ourt misapply the law when it found dependency under 42 Pa.C.S. [§ ] 6302(1) without a record to show [F]ather was not able and available?

[3.] Did the [t]rial [c]ourt misapply the law when it allowed evidence of allegations of dependency beyond the scope of the averments plead [sic]?

Father's Brief at 6.

Our Supreme Court set forth our standard of review for dependency cases as follows.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010).

For ease of our review, we have elected to address Appellant's issues in a different order. We begin by addressing Appellant's second and third issues averring the trial court misapplied the law in adjudicating the Children dependent.

Section 6302 of the Juvenile Act defines a "dependent child" as follows.

[A child who:] is without proper parental care or control, subsistence, education as required by law, or other care or control

---

1. On November 28, 2012, this Court, acting *sua sponte*, consolidated the four appeals.

necessary for his physical, mental, or emotional health, or morals. **A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]** 42 Pa.C.S.A. § 6302(1) (emphasis added).

■ In *In re G.T.*, 845 A.2d 870 (Pa.Super.2004), this Court clarified the definition of "dependent child" further.

The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*Id.* at 872 (internal quotations and citations omitted). *See also In re J.C.*, 5 A.3d 284, 289 (Pa.Super.2010) (citations omitted). Additionally, we note that "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *Id.*

■ In his third issue, Father argues that the trial court improperly considered evidence to support allegations by CYF of Father's substance abuse, domestic violence, and criminal conduct. Father contends that, because CYF did not specifically plead these matters in its dependency petitions, he did not have adequate notice that the trial court would consider them. Father's Brief at 14–15. Specifically, Father asserts that he objected at the time of the pre-hearing conference to the lack of specificity in the dependency petitions. Father suggests that the trial court should

have dismissed the dependency petitions, and forced CYF to file "competent" dependency petitions. *Id.* at 15.

The trial court rejected Father's argument, reasoning as follows.

The dependency petitions assert that the children are without proper care or control, have been victims of child abuse and are dependent as defined by the Juvenile Act, 42 Pa.C.S. § 6302. Evidence of a lack of proper parental care or control may be based upon "evidence of conduct by the parent, guardian or custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk." Father's history of domestic abuse, substance abuse and criminal conduct was relevant and a consideration regardless of whether it was specifically stated in the petition. Father is seeking primary custody of the children. This evidence was clearly relevant to the dependency determination and for purposes of determining visitation rights for Father.

Trial Court Opinion, 12/12/12, at 6.

We agree with the trial court's reasoning. With regard to section 6302, and the determination of dependency, the issue before the trial court at the dependency hearing was whether the Children were lacking proper parental care or control. As previously noted, the inquiry encompassed two distinct questions: 1) whether each child presently was without proper parental care and control, and, if so, 2) whether such care and control are immediately available. *In re G.T., supra* at 870. In determining whether each child was presently without proper parental care and control, the trial court could consider evi-

dence of conduct by Father that placed the health, safety or welfare of the Children at risk, including evidence of his use of alcohol or a controlled substance that placed the health, safety or welfare of the Children at risk. *See* 23 Pa.C.S.A. § 6302(1).

Further, our Supreme Court has held the following.

> A court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*In re M.L.,* 562 Pa. 646, 757 A.2d 849, 850–851 (2000).

Additionally, this Court has held the following.

> Even after a child has been adjudicated dependent, however, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary. Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody.

*In re G., T., supra* at 873 (citations omitted) (brackets in original).

■ This Court has determined that the Juvenile Act permits a trial court broad discretion in the admission of evidence in dependency proceedings. "It is well settled that questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and will be reversed on appeal only where a clear abuse of that discretion exists." *In re A.H.,* 763 A.2d 873, 880 (Pa.Super.2000) *quoting, In re M.K.,* 431 Pa.Super. 198, 636 A.2d 198, 203 (1994).

Thus, in determining whether each child could be placed with Father, *i.e.,* whether proper parental care and control were immediately available, the trial court could consider evidence of conduct by Father that placed the health, safety or welfare of the Children at risk, including evidence of his use of alcohol or a controlled substance that placed the health, safety or welfare of the Children at risk. The trial court did not commit an abuse of its discretion in admitting the evidence at the hearing on the dependency petitions, so that CYF could prove whether the Children lacked proper parental care and control, and whether Father was a placement option for the Children. *See* 42 Pa.C.S.A. §§ 6302(a), and 6341(a) and (c). Additionally, Father did not object to the admission of said evidence, thus, the trial court's admission of evidence regarding Father's conduct that would place the health, safety or welfare of the Children at risk was appropriate under the Juvenile Act. *See* 42 Pa.C.S.A. § 6351(e)(1), (f)(1) and (6), (f.1), and (f.2).

■ In his second issue, Father contends that the trial court abused its discretion in making an adjudication of dependency, because the record lacked clear and convincing evidence to support a finding as to the second portion of the dependency inquiry: *i.e.,* that he was not an able and available parent for the Children. Father complains that it was unclear in the trial court's opinion whether the trial court applied a "best interests of the child" standard or, a "clear and convincing evidence" standard. Father's Brief at 15. In support of this contention, Father points to the following sentence in the trial court's opinion.

The [trial court] determined that the petition for dependency was supported by clear and convincing evidence and that it was not in the safety or best interests of these children to be removed from current foster placement and placed in Father's care.

*Id.* at 15, *quoting* Trial Court Opinion, 12/12/12, at 5. Father does not provide any case law to support his argument.

When reviewed in context, the trial court opinion reveals that the trial court's reasoning was as follows.

The [trial court] determined that the petition for dependency was supported by clear and convincing evidence and that it was not in the safety or best interests of these children to be removed from current foster placement and placed in Father's care. Father presented no evidence to rebut any of the averments in the petition on the testimony. **He has thoroughly failed to demonstrate that he is willing to take any of the necessary measures to make the proper choices to assure the health, welfare and safety of the children.** Father's failure to appear for scheduled visitations, therapy sessions and the dependency hearing are compelling evidence of his lack of commitment. His failure to complete any of the services ordered, particularly his refusal to submit to a urine screening, was an important factor in the court's decision.

Trial Court Opinion, 12/12/12, at 5–6 (emphasis added).

With regard to whether proper parental care and control was immediately available, the trial court had to consider whether the Children could be in the custody of Father instead of their maternal relatives. In making a determination on the disposition of the Children, the trial court had to consider, pursuant to section 6351(f.1)(1) of the Juvenile Act, the following.

If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1)(1).

In *In re B.S.*, 861 A.2d 974 (Pa.Super.2004), a panel of this Court summarized the placement procedure for a dependent child as follows.

Section 6351(f.1) of the Juvenile Act lists the alternatives available to the juvenile court for the permanent placement of a dependant [sic] child. Upon a child's adjudication of dependency, the juvenile court may order reunification with the child's parent, guardian, or custodian. 42 Pa.C.S.A. § 6351(f.1)(1). If reunification with the child's parent, guardian, or custodian is not best suited to the child's safety, protection and physical, mental and moral welfare, the court may terminate parental rights and place the child for adoption. 42 Pa. C.S.A. § 6351(f.1)(2). If the court decides that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare, it may order the child to be placed with a legal custodian. 42 Pa. C.S.A. § 6351(f.1)(3). If the court decides that neither reunification, adoption, nor placement with a legal custodian are best suited to the child's safety, protection and physical, mental and moral welfare, the court can place the child with a fit and willing relative. 42 Pa. C.S.A. § 6351(f.1)(4). Finally, the court may place the dependant [sic] child in another permanent living arrangement if [the Agency] presents a compelling reason that any of the previous options are not suited best to the child's safety, pro-

tection and physical, mental and moral welfare. 42 Pa.C.S.A. § 6351(f.1)(5).

*In re B.S., supra* at 976–977.

Based on the mandatory language set forth in section 6351(f.2), CYF was obligated to present, with regard to the disposition of the Children, evidence of Father's conduct that places the health safety or welfare of the Children at risk, including evidence of his use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk. *See* 42 Pa.C.S.A. § 6351(f.1)(2) (stating, "[e]vidence of conduct by the parent that places the health, safety or welfare of the child at risk ... shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency[ ]").

■ We conclude that the trial court appropriately considered the question of whether proper parental care and control for the Children was immediately available. In reaching this decision, the trial court necessarily considered the health, welfare and safety of the Children, as well as whether placing the Children with Father would serve the best interests of the Children.

When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. *See In re Sweeney,* 393 Pa.Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent ... the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of the Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within

the provisions of this chapter." 42 Pa. C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." *In re E.F.V.,* 315 Pa.Super. 246, 461 A.2d 1263, 1267 (1983).

*In re K.C.,* 903 A.2d 12, 14–15 (Pa.Super.2006). Thus, we conclude there is no merit to Father's argument that the trial court improperly applied a "best interests" standard to the case before it.

■ Finally, we address Father's argument that the trial court abused its discretion in appointing educational and medical decision makers for the Children pursuant to the Pennsylvania Rules of Juvenile Court Procedure 1145 and 1147. Father's Brief at 10. Specifically, Father argues that there was nothing in the record to show that he was unavailable or unwilling to maintain such a role for the Children. *Id.* at 11. We note, the trial court ordered the appointment of such decision makers at the pre-hearing conference, and that Father has raised this issue at the first opportunity for an appeal from the final, appealable order. Therefore, we find the issue preserved for our review.

First, in addressing the appointment of medical decision makers for the Children we are guided by Rule 1145, which provides as follows.

**A. Pre-petition treatment.** Prior to the filing of a dependency petition, an application to the court may be made to treat a child when prompt treatment is necessary.

**B. Post-petition examination and treatment.** After a petition has been filed, a motion for examination and treatment of a child may be filed.

Pa.R.J.C.P. 1145.

The comment and note that follow Rule 1145 provide, in pertinent part, as follows.

*Comment:*

. . .

Pursuant to 42 Pa.C.S. § 6339(b), the court may order the child to be examined at a suitable place by a physician or psychologist and may also order a medical or surgical treatment of a child who is suffering from a serious physical condition or illness, which in the opinion of a licensed physician, requires prompt treatment, even if the guardian has not been given notice of a hearing, is not available, or without good cause informs the court of his refusal to consent to the treatment. 42 Pa.C.S. § 6339(b). **In addition, 42 Pa.C.S. § 6357 provides a custodian to whom legal custody has been given by the court has the right to the physical custody of the child, the right to determine the nature of the care and the treatment of the child, including ordinary medical care and the right and duty to provide for the care, protection, training, and education, and the physical, mental, and moral welfare of the child.** An award of legal custody shall be subject to the conditions and limitations of the order and to the remaining rights and duties of the parts or guardian of the child as determined by the court. 42 Pa.C.S. § 6357.

. . .

Comment and Note to Pa.R.J.C.P. 1145 (emphasis added).

With regard to the appointment of an educational decision maker for a dependent child, Rule 1147 provides as follows.

**Rule 1147. Educational Decision Maker**

**A. Generally.** At any proceeding or upon motion, the court shall appoint an education decision maker for the child if it determines that:

(1) the child has no guardian; or

(2) the court, after notice to the guardian and an opportunity for the guardian to be heard, has made a determination that it is in the child's best interest to limit the guardian's right to make decisions regarding the child's education.

. . .

Pa.R.J.C.P. 1147.

Additionally, in pertinent part, the comment and note following Rule 1147 provide as follows.

*Comment:* A child in dependent care is to have a clearly identified, legally authorized educational decision maker. This is a particular concern for highly mobile children whose caregivers may change and whose guardian may be unavailable.

. . .

A court is not to appoint an educational decision maker if there is a parent, guardian, or other authorized person (*e.g.,* foster parent, relative with whom the child lives or surrogate parent appointed under the IDEA ["Individuals with Disabilities Education Act"]) who is competent, willing and available to make decisions regarding the child's education and who is acting in the child's best interest regarding all educational matters. *See* Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (2004). A court should limit the authority of a parent to make decisions regarding education only to the extent necessary to protect the child's interest and can reinstate the parent or change the educational decision maker at any time.

Unless limited by the court in its appointment order, an educational decision maker: 1) is responsible for making all decisions concerning education, including special education, for the child; and 2) can consent to or prohibit the release of information from the child's school

records as a parent in accordance with the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g and 34 C.F.R. § 99.3 (1974). The educational decision maker may be a family member, a family friend, a mentor, a foster parent, a former foster parent, a Court Appointed Special Advocate, or, if an educational decision maker for special education is not needed, a child welfare professional. Except as otherwise provided by the IDEA, it is within the discretion of the court to appoint an educational decision maker and whom to appoint. In all cases, however, an educational decision maker appointed by the court should be familiar with a child's educational rights or is to agree to be trained regarding these issues.

. . .

The authority of the court to appoint an educational decision maker is derived from the broad powers of the court to issue orders that "provide for the care, protection, safety, and wholesome mental and physical development of children." 42 Pa.C.S. § 6301(b)(1.1). The IDEA also requires that each child who is eligible for special education has an active parent or other identified person who can participate in the process concerning special education. *See* IDEA, 20 U.S.C. §§ 1401(23) and 1415(b)(2); 34 C.F.R. §§ 300.30, 300.45, and 300.519.

. . .

Comment and Note to Pa.R.J.C.P. 1147.

At the pre-hearing conference, Father's counsel objected to CYF's request for the appointment of medical and educational decision makers. N.T., 9/4/12, at 39. Father's counsel objected on the basis that there had not been any testimony that Father was unavailable to sign any requests concerning medical or educational matters, nor that he had been asked to do so and refused. *Id.* The trial court responded as follows.

> THE COURT: Well, given the current situation, I'm sure your client is well aware how irritated I am about him not taking the drug screen. And as I said on numerous occasions, if you come to— you know you're coming to court and you're going to flunk a drug screen, then it gives me an indication you have a problem.
>
> That being said, the current caregivers certainly know these children better than [F]ather does at this point. This is not permanent. This is until we can get through the final petition. So, yes, I am going to do that . . .

N.T., 9/4/12, at 39–40. Father's counsel renewed this objection at the hearing on the dependency petitions. N.T., 10/2/12, at 33. The trial court decided to maintain the medical and education decision-making with the Children's caregivers. *Id.* at 37.

Considering the evidence that Father had virtually no contact with the Children for the past 10 years, and had only visited the Children on one occasion prior to the pre-hearing conference, we conclude the trial court did not abuse its discretion in determining that the Children's caregivers had more knowledge of the Children and their medical and educational needs than Father had at that time. We further note that the trial court was afforded discretion under Rules 1145 and 1147 to ensure that the appropriate medical and educational decisions would be made for the Children. *See* Comments and Notes to Rules 1145 and 1147, *supra.* This Court does not discern any abuse of the trial court's discretion in appointing the Children's caregivers as their medical and educational decision makers, particularly in view of the trial court's concerns regarding Father's usage of drugs and alcohol, pending a per-

manent ruling by the trial court on the dependency petitions.

Accordingly, for all the foregoing reasons, we affirm the October 3, 2012 orders of the trial court.

Orders affirmed.