J-S48001-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.V. | | No. 548 MDA 2014 |

Appeal from the Order entered February 24, 2014,
Court of Common Pleas, Schuylkill County,
Criminal Division at No. CP-54-DP-0000220-2013

---

| | | |
|---|---|---|
| IN THE INTEREST OF: R.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.V. | | No. 553 MDA 2014 |

Appeal from the Order entered February 24, 2014,
Court of Common Pleas, Schuylkill County,
Criminal Division at No. CP-54-DP-0000219-2013

BEFORE:  DONOHUE, JENKINS and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED AUGUST 01, 2014**

J.V. ("Mother") appeals from the orders entered by the Schuylkill County Orphans' Court on February 24, 2014, adjudicating R.A., age 14 ("Re.A.") and R.A., age 5 ("Ro.A.") dependent.  The orders also transferred legal and physical custody of Re.A. and Ro.A. to their father, J.A. ("Father").  For the reasons that follow, we affirm.

A brief summary of the relevant facts and procedural history is as follows.  On August 6, 2013, Schuylkill County Children and Youth Services (the "Agency") filed dependency petitions for Re.A. and Ro.A. (the

*Retired Senior Judge assigned to the Superior Court.

"Children"). The trial court adjudicated the Children dependent and issued protective orders on August 27, 2013.

On February 5, 2014, the Agency filed a shelter care application with regard to the Children based on its concerns for the safety of the Children. The Agency requested the trial court to transfer custody of the Children to Father because of its concerns regarding Mother's relationship with a registered Megan's Law offender and her mental health status. The trial court held a hearing on February 24, 2014.

Ashely Fehr ("Fehr"), a caseworker in the General Protective Unit of the Agency, testified at the hearing. Fehr testified that she filed the protective order and recommendation to transfer custody of the Children to Father. N.T., 2/24/14, at 5. Fehr testified that D.F., Mother's boyfriend, "had served five years in prison after pleading guilty to indecent sexual contact with two 8-year-old-girls." *Id.* at 6. In November 2013, Mother called the Agency and asked hypothetically what the Agency's stance would be if she entered into a relationship with a Megan's Law offender. *Id.* at 7. The Agency informed Mother that it would say no contact with the children until the Agency verified his charges and restrictions. *Id.* Despite receiving this recommendation from the Agency, Ro.A.'s school reported in December 2013 that Ro.A. informed them that he had been staying at D.F.'s house. Re.A. also reported that she and Ro.A. had stayed at D.F.'s house and that they had no unsupervised contact. *Id.*

D.F. met with the Agency and signed releases so the Agency could obtain records from his incarceration. *Id.* at 17. D.F.'s records revealed that although D.F. received treatment while in prison, he did not continue treatment after being released. N.T., 2/24/14, at 26-27. This information left the Agency with concerns that he may be at risk to re-offend. *Id.* at 27.

The Agency also had concerns regarding Mother's mental health. Mother failed to complete a mental health evaluation as requested by the Agency and ordered by court in August 2013.[1] *Id.* at 8. Mother scheduled an appointment, however, there were several delays caused by insurance issues, issues with determining the proper evaluator, and inclement weather. *Id.* at 9. Mother failed to return phone calls to reschedule the evaluation. *Id.* at 9.

Jennifer Schumacher ("Schumacher"), a caseworker supervisor at the Agency, testified that Mother called the Agency up to 20 times a day. *Id.* at 24. In addition, Schumacher testified that Mother alleged that the Children's paternal grandmother, M.S. ("Paternal Grandmother"), sexually abused the Children. N.T., 2/24/14, at 24. The police and the Agency investigated and determined that the allegations were unsubstantiated. *Id.* at 24.

---

[1] The Agency requested the mental health evaluation because Mother sought custody of K.A., Father's daughter, who had just been released from a facility for mental health treatment. N.T., 2/24/14, at 15. The Agency sought a determination of Mother's mental health to determine her ability to parent K.A. *Id.*

At the conclusion of the hearing, the trial court adjudicated the Children dependent in light of Mother's contact with D.F. and her failure to obtain a psychological evaluation. *Id.* at 47. The trial court also accepted the Agency's recommendation of transferring custody of the Children to Father. *Id.* On March 26, 2014, Mother filed a timely notice of appeal. On appeal, Mother raises the following issues for our review:

1.  Did the trial court err and commit an abuse of discretion when it determined that the [C]hildren continued to be dependent even though the evidence presented was not clear and convincing that dependency should continue?

2.  Did the trial court err and commit an abuse of discretion when it determined that the best placement for the [C]hildren was with [] Father and, therefore, removed the [C]hildren from the home of their Mother without a showing that the [C]hildren were at risk?

Mother's Brief at 3.

For her first issue on appeal, Mother argues that the trial court erred and committed an abuse of discretion when it determined that the Children continued to be dependent even though the evidence presented was not clear and convincing. We begin with our well-settled standard of review for dependency cases:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower

court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re E.B.*, 83 A.3d 426, 430-31 (Pa. Super. 2013) (citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)).

Section 6302 of the Juvenile Act defines a "dependent child" in relevant part as a child who is

> without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302(1).

The petitioner carries the burden of demonstrating by clear and convincing evidence that the child meets the statutory definition of dependency. *In re J.J.*, 69 A.3d 724, 730 (Pa. Super. 2013) (citing *In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010)). "'Clear and convincing' evidence has been defined as testimony that is 'so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction without hesitancy, of the truth of the precise facts in issue.'" *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (citing *In re C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997)).

In this case, the trial court found the Children dependent "to ensure the physical, mental and emotional safety of the children […] particularly in light of their contact with D.F. and Mother's failure to get evaluated." Trial Court Opinion, 4/29/14, at 9. The Agency presented evidence that Mother's conduct placed the safety of the Children at risk, specifically Mother's relationship with a convicted Megan's Law offender.[2] Mother permitted D.F. to have contact with the Children despite the Agency's recommendation that Mother avoid contact. N.T., 2/24/14, at 7. In addition, Schumacher testified regarding the Agency's concern that D.F.'s failure to continue treatment after being released from incarceration, despite a court order to do so, would heighten his risk of re-offending. *Id.* at 26-27.

The Agency also presented evidence supporting their concerns regarding Mother's mental health. Mother failed to report to an appointment for mental evaluation and has since failed to reschedule the appointment. *Id.* at 8-9. Mother also made repeated and excessive phone calls to the Agency, up to 20 times in one day and made unfounded accusations of sexual abuse by Paternal Grandmother while choosing to be in a relationship with a Megan's Law offender. *Id.* at 24. Moreover, despite her

---

[2] Mother testified that she was no longer in a relationship with D.F. N.T., 2/24/14, at 30. However, Mother also testified at the hearing that she could no longer speak about D.F. under HIPAA because she is a licensed EMT and he became a patient of hers. *Id.* at 39. The Agency testified that they were unable to verify the status of their relationship. *Id.* at 8. The trial court did not find Mother's claim that she is no longer in contact with D.F. to be credible. *Id.* at 46; Trial Court Opinion, 4/29/14, at 10.

unsubstantiated allegations of sexual abuse by Paternal Grandmother, Mother testified that she did not see a problem with the Children being at D.F.'s home. *Id.* at 39.

After reviewing the record, we conclude that the Agency established clear and convincing evidence that Mother's conduct placed the safety of the children at risk. As a result, the trial court did not abuse its discretion in adjudicating the Children dependent.

For her second issue on appeal, Mother argues that the trial court erred and abused its discretion when it determined that the best placement for the Children was with Father and removed the Children from Mother's home without a showing that the Children were at risk. At the outset, we note that Mother's claim that the trial court removed the Children from her home without a showing that the Children were at risk is meritless given our disposition of Mother's first issue.

We further conclude that the trial court did not err or abuse its discretion in finding that the best placement for the Children was with Father. Section 6351 of the Juvenile Act governs the disposition of children adjudged to be dependent. It provides, in relevant part:

> **(a) General rule.--**If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:

> (1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

42 Pa.C.S.A. § 6351(a)(1).

This Court has held that "[w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest […]." *In re K.C.*, 903 A.2d 12, 14 (Pa. Super. 2006) (citing *In re Sweeney*, 574 A.2d 690, 691 (Pa. Super. 1990)). In this case, the trial court, citing to its obligation to ensure the safety of the Children, determined that "[b]ased on the evidence presented, the best interests of the [C]hildren were served by removing them from Mother and placing them with Father […]." Trial Court Opinion, 4/29/14, at 11. Furthermore, the trial court determined that transferring custody to Father was the least restrictive measure to ensure the safety of the Children. *Id.* at 9.

Although Mother alleged that Paternal Grandmother sexually abused the Children, the Agency and the police determined that these allegations were unsubstantiated. Moreover, the trial court found credible the testimony of the Agency's representatives that it had no concerns regarding Father's care of his daughter K.A. or his ability to provide for the Children. The Agency further recommended that all three of Father's children live in the same household with him. Considering Mother's relationship with D.F.

and her apparent mental health issues, we conclude that the trial court did not abuse its discretion by placing the Children with Father.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2014