J-A03037-20
J-A03038-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: H. F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 864 MDA 2019 |

Appeal from the Order Entered May 2, 2019
In the Court of Common Pleas of Berks County Juvenile Division at
No(s):  86277,
CP-06-DP-0000196-2017


| | | |
|---|---|---|
| IN THE INTEREST OF: A.B.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: H.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 868 MDA 2019 |

Appeal from the Decree Entered April 29, 2019
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
86277,
CP-06-DP-0000196-2017


BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                          **FILED MARCH 25, 2020**

Appellant, H.F. ("Mother"), appeals from the Decree involuntarily terminating her parental rights to A.B.R. ("Child") and the Order changing Child's permanency goal to adoption.[1]  Upon careful review, we affirm.

The relevant procedural and factual history is as follows.  In July 2011, Mother became known to Berks County Children and Youth Services ("CYS") when she gave birth to a baby who tested positive for heroin.  In March 2013, Mother voluntarily relinquished her parental rights to that child.  In May 2017, Mother gave birth to Child, who tested positive for opioids and methadone. Hospital staff also found a pill bottle containing an unknown liquid hidden underneath Mother's pillow in the hospital.  Mother was reportedly homeless and had an extensive criminal history, including entering guilty pleas to numerous drug related offenses, driving under the influence, driving under a suspended license, promoting prostitution, and conspiracy to receive stolen property.

On May 15, 2017, CYS obtained emergency custody of Child and, on October 4, 2019, Mother agreed to adjudicate Child dependent and commit Child to CYS.  The trial court ordered Mother to participate in parenting education, submit to drug, alcohol and mental health evaluations and follow recommendations, establish and maintain suitable housing, and participate in supervised visitation with Child on a bi-weekly basis.

_____

[1] This Court *sua sponte* consolidated the appeals at Docket Nos. 864 MDA 2019 and 868 MDA 2019.

Mother initially complied with court-ordered services, including attending drug and alcohol treatment through Habit Opco, a methadone clinic.

At the permanency review hearing on March 13, 2018, CYS presented evidence that Mother was attending approximately 60% of offered visits with Child and the court found that Mother was moderately compliant with her permanency plan.

On April 16, 2018, Mother participated in a psychiatric evaluation with Larry Rotenberg, M.D. Dr. Rotenberg diagnosed Mother with heroin Dependence and Histrionic Personality Disorder and concluded that Mother "blames others for her problems" and has a "poor prognosis." Exhibit 20, Psych Evaluation, 4/16/2018, at 10, 12. Nevertheless, Dr. Rotenberg recommended that if Mother could show six months to a year of "better organization; keeping her appointments regardless; telling the truth about issues; and not exaggerating her positives and minimizing her negatives; and taking appropriate care of her infant," then CYS could consider reunifying Child with Mother. *Id.* at 12.

On May 22, 2018, after a status review hearing, the court increased Mother's visitation with Child to six hours of supervised visitation per week. On July 2, 2018, Mother relapsed and tested positive for opiates.

On August 15, 2018, CYS filed a Petition to Involuntarily Terminate Mother's Parental Rights ("TPR Petition").

On September 10, 2018, Mother attended a permanency review hearing while appearing to be intoxicated and the court made a finding that Mother

was minimally compliant with her permanency plan.  After the hearing, Mother tested positive for alcohol.

Mother subsequently tested positive for alcohol on September 17, 20, and 26, and October 3, 2018, which is the last time Mother attended a scheduled urine screen.  From May 2017 until October 2018, Mother tested positive for methamphetamines 19 times, opiates one time, and alcohol 5 times.  From May 2017 until April 2019, Mother failed to appear for over 60 urine screens.

On October 1, 2018, CYS filed a Motion for Reduction/Restriction of Visitation and, on October 15, 2018, the court suspended a scheduled status hearing on the Motion because Mother was hospitalized for detoxification.  On November 29, 2018, Signature Family Services discharged Mother from casework services for noncompliance.   On December 10, 2018, the court suspended Mother's visits with Child.  On December 21, 2018, Signature Family Services discharged Mother from nurturing parenting services for non-compliance.

On February 19, 2019, after a permanency review hearing, the court made a finding that Mother was not compliant with her permanency plan and that she had not attended a visit with Child in the two months prior to the court suspending her visits on December 10, 2018.

On April 29, 2019, the trial court held a hearing on CYS' TPR Petition. Mother failed to appear.  CYS informed the court that it had made repeated attempts to serve Mother with notice of the hearing at her last known address,

published notice of the termination hearing in the local newspaper on April 1, 2019, and informed the privately retained attorney who previously represented Mother in the dependency proceedings about the time and date of the hearing. CYS proceeded to enter 24 exhibits into evidence, without objection.

On April 29, 2019, the trial court entered a Decree involuntarily terminating Mother's parental rights and, on May 2, 2019, the trial court entered an Order changing Child's permanency goal to adoption.[2]

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review:

1. Did the trial court err when it ordered that Mother's parental rights be terminated without competent evidence on the record?

2. Did the [t]rial [c]ourt err when it didn't "really care" about Mother's Motion to place child in kinship care unless the placement was long term, and then, after the child had been in placement for five months, refuse to adjudicate Mother's Motion and instead defer the decision to place the child in foster care to the county agency when the kinship family was approved for foster care?

Mother's Br. at 3.

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and

_____

[2] On April 29, 2019, the trial court also entered a Decree involuntarily terminating the parental rights of Child's biological father, who did not file a Notice of Appeal.

credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *In re T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* The decision to admit or exclude evidence is within the sound discretion of the trial court. *In re A.J.R.-H.*, 188 A.3d 1157, 1166–67 (Pa. 2018). Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Likewise, this Court reviews findings in a dependency case for an abuse of discretion and we are required to accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). Notably, "we are not in a position to reweigh the evidence and the credibility determinations of the trial court." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

In her first issue, Mother avers that the trial court erred when it involuntarily terminated Mother's parental rights without competent evidence

on the record. Mother's Br. at 3. Notably, Mother does not argue that the evidence offered by CYS was insufficient to involuntarily terminate her parental rights. Rather, Mother argues that CYS only offered 24 exhibits as evidence and CYS entered those exhibits into evidence improperly, without proper authentication. *Id.* at 16.

Mother failed to appear at the termination hearing and, thus, failed to object to the admission of the exhibits into evidence. Accordingly, this issue is waived. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *Fillmore v. Hill*, 665 A.2d 514, 516 (Pa. Super. 1995) (stating that the failure to timely object to a basic and fundamental error will result in the waiver of that issue); *In re S.C.B.*, 990 A.2d 762, 767 (Pa. Super. 2010) (concluding that a mother's failure to raise a timely objection to an error during a termination of parental rights hearing resulted in waiver of that issue on appeal).

Even though Mother was not present at the hearing to object to the admission of the exhibits into evidence, Mother argues that a notation in the transcript preserved all objections to the admission of evidence. Mother's Br. at 12. Specifically, Mother notes that the beginning of the April 29, 2019 transcript states:

> (REPORTERS NOTE: at the direction of the trial judge, this transcript shall be considered as containing an exception to every ruling by the court)

*Id.* (citing N.T. 4/29/19, Hearing, at 4). This argument fails.

Pennsylvania Rule of Evidence 103 provides, in relevant part, that a party may claim error in a ruling to admit or exclude evidence **only** if (1) the ruling admits evidence and (2) **the party** makes a timely objection and states the specific ground on the record. Pa.R.E. 103(a)(1). It is well settled that this Court "will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected." *Fillmore*, 665 A.2d at 516. "The principle rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error . . . By specifically objecting to any obvious error, the trial court can quickly and easily correct the problem and prevent the need for a new trial." *Id.* (citations omitted).

Rule 103 requires the party, *i.e.* **Mother**, to make a timely and specific objection on the record in order to preserve her claim of error. *See* Pa.R.E. 103(a)(1). As stated above, when Mother failed to appear at the hearing and to object to admission of the exhibits into evidence, she waived this claim of error on appeal. We decline to conclude that the "reporter's note" in the April 29, 2019 transcript is a proper, timely, and specific way to preserve an objection under Rule 103. Moreover, the "reporter's note," added after the hearing during transcription, did not afford the trial court an opportunity to correct any error at the time of the hearing. As stated above, when Mother failed to appear at the hearing and object to admission of the exhibits into evidence, she waived this claim of error on appeal. *See* Pa.R.A.P. 302(a); *Fillmore*, 665 A.2d at 515-16; *In re S.C.B.*, 990 A.2d at 767.

Mother also argues that CYS failed to present "competent evidence" that she received proper notice of the TPR hearing. Mother's Br. at 12-14. In effect, Mother asserts that she did not receive proper notice of the TPR hearing, which is why she was not present. *Id.* As Mother failed to raise this claim in her Rule 1925(b) Statement, this claim is waived. *See* Pa.R.A.P. 1925(b)(3)(iv) (stating "any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived.")

Finally, Mother cites *In re A.J.R.-H.*, *supra*, to support her argument that the trial court erred when it terminated Mother's parental rights based on improperly admitted exhibits. Mother's Br. at 1 4-21. Mother's argument is unavailing as *In re A.J.R.-H.* is easily distinguished from the instant case.

In *In re A.J.R.-H.*, CYS entered over 160 exhibits into evidence in a TPR hearing, without testimony and over the mother and father's objections. 188 A.3d at 1162. Our Supreme Court reversed, holding that the record failed to support a finding that the exhibits satisfied the business records exception to hearsay and concluding that the remaining evidence that CYS presented was not competent to terminate parental rights. *Id.* at 1167-68, 1179. However, unlike the parents in *A.J.R.-H.*, Mother did not object to the admission of the 24 exhibits that CYS entered into evidence and, as discussed above, has waived any objections thereto.

In her second issue on appeal, Mother avers that the trial court erred when it "refused to judicially arbitrate" CYS' refusal to place Child in kinship

care with Mother's aunt and uncle.[3]  Mother's Br. at 25.  Specifically, Mother

argues that CYS denied placement for inappropriate reasons, including

because the kinship parents disliked CYS and believed that CYS was treating

Mother unfairly, and because CYS was punishing Mother for her

noncompliance with drug treatment.  *Id.* at 31.   Finally, Mother makes the

irrelevant argument that CYS' refusal to place Child in kinship care with the

maternal aunt and uncle caused Mother to lose hope and relapse into drug

addiction.  *Id.* at 33-37.  Our review of the record belies Mother's claims.

The statute governing kinship care provides, in relevant part, that when

a child "is in the legal custody of the county agency, the county agency shall

give first consideration to placement with relatives or kin" and "[i]f the child

is not placed with a relative or kin, the agency shall document the reason why

the placement was not possible."  67 Pa.C.S. 3105(c).  "The court may place

children with a foster family, although there might be willing relatives, where

_____

[3] At oral argument and in the Briefs, the parties raised an issue regarding the proper time to appeal a trial court's decision to deny a party's request to move a child from foster care to a kinship care placement.  *See* Mother's Br. at 22; CYS' Br. at 12-14.  Instantly, because Appellant appeals from an Order granting a status change to adoption and a Decree terminating parental rights, both final orders, the appeal is properly before us.  *See In re H.S.W.C.-B*, 836 A.2d 908, 911 (Pa. 2003) ("An order granting or denying a status change, as well as an order terminating or preserving parental rights, shall be deemed final when entered.").  This panel recognizes that, in some cases, the best practice would be to permit a party to appeal the denial of kinship care at the time the trial court denies the request.  However, the issue is not properly before us.  We leave it to another case in which a party appeals at the time the trial court decides the request for a change in placement to determine whether a party may also appeal at that time.

foster care is in the best interests of the children or aggravated circumstances exist." *In re Adoption of G.R.L.*, 26 A.3d 1124, 1127 (Pa. Super. 2011) (citations omitted). Importantly, "[t]he goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of children, but must be weighed in conjunction with other factors." *Id.* (citation omitted). After a child is adjudicated dependent, "the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. *In re J.J.*, 69 A.3d 724, 732 (Pa. Super. 2013).

Contrary to Mother's assertions, the trial court heard competent evidence throughout the dependency proceedings to conclude that placing Child in kinship care was not in Child's best interest. On April 29, 2019, the trial court changed Child's permanency goal to adoption, ordered that Child shall remain in foster care, and ordered that CYS shall not consider any relatives presenting for Child. The trial court opined:

> At a March 13, 2018 permanency review hearing before a hearing officer in the underlying dependency proceedings, [CYS] advised that [m]aternal [a]unt and [u]ncle presented to [CYS] as resources and were licensed through Bethany Christian Services ("Bethany"). They were, however, reluctant to comply with requirements to keep firearms locked and secured. Additionally: (a) [m]aternal [a]unt was disruptive during associated court proceedings requiring the intervention of the Berks County Sheriff's Office; (b) [m]aternal [a]unt and [u]ncle used significant profanity during visits with the Child; and (c) [m]aternal [a]unt and [u]ncle were overheard telling Mother that they would give her access to [] Child at anytime she wished (should [] Child be placed with them), despite any [t]rial [c]ourt order to the contrary. Based on the foregoing, the [t]rial [c]ourt did not find

it in [] Child's best interest to be placed with [m]aternal [a]unt and [u]ncle.

Additionally, it is unclear how placement with [m]aternal [a]unt and [u]ncle would have impacted the termination of Mother's parental rights, nor does Mother explain in any meaningful way how the two are related. Mother's lack of compliance with her own services and failure to correct the conditions leading to dependency are dissociative of where the [t]rial court placed [] child for the duration of the dependency proceedings.

Trial Ct. Op., filed 10/21/19, at 5-6 (unpaginated). Our review of the record supports the trial court's findings. We decline to usurp the credibility findings of the court or reweigh the evidence. *See In re L.Z.*, 111 A.3d at 1174; *In re R.J.T.*, 9 A.3d at 1190. Accordingly, we find no abuse of discretion.

Finally, Mother makes the curious argument that the trial court and CYS failed to consider the effect of a recent Supreme Court decision, *In re L.J.B.*, 199 A.3d 868 (Pa. 2018), which held that a "[m]other's act of ingesting opioids while pregnant did not constitute child abuse."[4] Mother's Br. at 35 (citing 199 A.3d at 877). Mother argues that CYS "treated Mother as if her drug addiction was child abuse" and punished Mother when it refused to allow Child "to be placed in kinship care with more liberal visitation" which "might have been

---

[4] Mother failed to include this issue in his Statement of Questions in violation of Pa.R.A.P. 2116(a). However, Mother preserved the issue in her Rule 1925(b) Concise Statement, the trial court addressed the issue in its Rule 1925(a) Opinion, and Mother provides argument on the issue in her Brief. Accordingly, because our appellate review is not hampered, we decline to find waiver. *See Savoy v. Savoy*, 641 A.2d 596, 598 (Pa. Super. 1994) (declining to find waiver when an appellant's failure to comply with Rule 2116 did not impede appellate review).

enough to motivate Mother to overcome her addiction." ***Id.*** at 35-36. Mother's argument is devoid of merit.

The holding in ***In re L.J.B., supra***, is completely irrelevant and provides no guidance to the instant case. Here, Mother agreed to an adjudication of dependency, CYS did not request a finding of child abuse, and the trial court did not find Mother to be a perpetrator of child abuse for ingesting opioids while pregnant with Child. Accordingly, Mother's reliance on ***In re L.J.B.***, is misplaced. As stated above, the trial court did not abuse its discretion when it failed to place Child in kinship care.

In conclusion, the trial court did not abuse its discretion when it terminated Mother's parental rights to Child, changed Child's permanency goal to adoption, and ordered Child to remain in foster care.

Decree affirmed. Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/25/2020

- 13 -