**[J-57-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | |
|---|---|
| IN THE INTEREST OF: L.J.B., A MINOR | : No. 10 MAP 2018 |
| | : |
| | : |
| | : Appeal from the Order of the Superior |
| APPEAL OF: A.A.R., NATURAL | : Court at No. 884 MDA 2017 dated |
| MOTHER | : December 27, 2017 Vacating the |
| | : Order of Clinton County Court of |
| | : Common Pleas, Juvenile Division, |
| | : dated May 24, 2017 at No. CP-18-DP- |
| | : 0000009-2017 and remanding for |
| | : further proceedings |
| | : |
| | : ARGUED: September 25, 2018 |


## OPINION ANNOUNCING THE JUDGMENT OF THE COURT


**JUSTICE DONOHUE**                                    **DECIDED: December 28, 2018**

The Pennsylvania General Assembly enacted the Child Protective Services Law, 23 Pa.C.S. §§ 6301-6386 ("CPSL"), based on its finding that child victims of abuse urgently need effective services to prevent further injury and impairment. *Id.*, § 6302(a). Its purpose is

> to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained. It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with

procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

*Id.*, § 6302(b). A finding that a person has committed child abuse[1] results in the inclusion of the actor in a statewide database, *id.*, §§ 6331, 6338(a), the purpose of which is to protect children from further abuse. *P.R. v. Dep't of Pub. Welfare*, 801 A.2d 478, 483 (Pa. 2002). Inclusion on the statewide database impacts a person's ability to obtain certain kinds of employment, housing, and participate in certain volunteer activities. *See* 23 Pa.C.S. §§ 6344, 6344.1, 6344.2.

We address here an issue of first impression under the CPSL: whether a woman's use of opioids while pregnant, which results in a child born suffering from neonatal abstinence syndrome ("NAS"), constitutes "child abuse" as defined.[2] We conclude, based

---

[1] Such reports are either "founded" or "indicated." *See* 23 Pa.C.S. §§ 6303, 6338.

[2] Opioid addiction has reached a crisis level in the United States, and Pennsylvania has not been immune from its effects. Recent statistics place Pennsylvania among the states with the highest rates of drug overdose deaths, with opioid-related overdose deaths occurring at a rate of 18.5 per 100,000 persons. Center for Disease Control and Prevention, *Drug Overdose Death Data* (Dec. 19, 2017), https://www.cdc.gov/drugoverdose/data/statedeaths.html (providing 2016 statistics indicating that "the states with the highest rates of death due to drug overdose were West Virginia (52.0 per 100,000), Ohio (39.1 per 100,000), New Hampshire (39.0 per 100,000), the District of Columbia (38.8 per 100,000), and Pennsylvania (37.9 per 100,000)" – a forty-four percent increase from 2015 to 2016); National Institute on Drug Abuse, *Pennsylvania Opioid Summary* (Feb. 2018), https://www.drugabuse.gov/drugs-abuse/opioids/opioid-summaries-by-state/pennsylvania-opioid-summary (stating that Pennsylvania's rate of opioid drug deaths are above the national average of 13.3 deaths per 100,000 persons). Indeed, on January 10, 2018, in the hopes of combating opioid addiction, Governor Tom Wolf took the unprecedented step of proclaiming the heroin and opioid epidemic to be a statewide disaster emergency. *See* Press Release, Governor Wolf Declares Heroin and Opioid Epidemic a Statewide Disaster Emergency (Jan. 10, 2018), https://www.governor.pa.gov/governor-wolf-declares-heroin-and-opioid-epidemic-a-statewide-disaster-emergency/. The issue we address today emanates from this epidemic.

on the relevant statutory language, that a mother cannot be found to be a perpetrator of child abuse against her newly born child for drug use while pregnant. We therefore reverse the decision of the Superior Court and remand the matter for reinstatement of the trial court's order.

As all of the pertinent terms are defined by statute, we set forth the relevant statutory definitions in order to provide context for our discussion of this case. The CPSL defines "child abuse," in relevant part, as "intentionally, knowingly or recklessly … (1) [c]ausing bodily injury to a child through any recent act or failure to act," or "(5) [c]reating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa.C.S. § 6303(b.1)(1), (5). A "recent act" is "[a]ny act committed within two years of the date of the report to the department or county agency." *Id.*, § 6303(a).

Not every person who harms or injures a child is a perpetrator of "child abuse" under the CPSL. Instead, a "perpetrator" is defined as "[a] person who has committed child abuse as defined in this section," *id.*, and is limited to the following individuals:

> (i) A parent of the child.
>
> (ii) A spouse or former spouse of the child's parent.
>
> (iii) A paramour or former paramour of the child's parent.
>
> (iv) A person 14 years of age or older and responsible for the child's welfare or having direct contact with children as an employee of child-care services, a school or through a program, activity or service.
>
> (v) An individual 14 years of age or older who resides in the same home as the child.
>
> (vi) An individual 18 years of age or older who does not reside in the same home as the child but is related within the third degree of consanguinity or affinity by birth or adoption to the child.

(vii) An individual 18 years of age or older who engages a child in severe forms of trafficking in persons or sex trafficking, as those terms are defined under section 103 of the Trafficking Victims Protection Act of 2000 (114 Stat. 1466, 22 U.S.C. § 7102).

*Id.*, § 6306(a)(1).  The CPSL defines a "child" as "[a]n individual under 18 years of age." *Id.*, § 6303(a).

With these definitions in mind, we turn to the uncontested facts of this case.  In 2016, A.A.R. ("Mother"), was released from incarceration, after which she relapsed into drug addiction, using opioids (pain pills) and marijuana.  Mother subsequently learned that she was pregnant with L.J.B. ("Child").  She estimated that she was approximately four months pregnant at that time.  Thereafter, she sought treatment for her addiction, first through a methadone maintenance program[3] and then with subutex.[4]  Mother again relapsed and in mid-January 2017 she tested positive for opiates, benzodiazepines and marijuana, none of which were prescribed for her.

Mother gave birth to Child on January 27, 2017 at Williamsport Hospital.  At the time of Child's birth, Mother tested positive for marijuana and subutex.  By the third day of life, Child began exhibiting symptoms of NAS, including tremors, excessive suck, increased muscle tone and loose stools, which doctors treated with morphine.  Mother reportedly left Child in the hospital and did not consistently check on her or stay with her

---

[3]  Methadone is an opioid used to help dependent patients reduce their cravings and symptoms of withdrawal.  *Clinical Guidelines for Withdrawal Management and Treatment of Drug Dependence in Closed Settings*, 6.1, Geneva: World Health Organization, 2009.

[4]  Subutex, also known as buprenorphine, is a prescription pill used to treat opioid dependence.                                                                                   *See* https://www.accessdata.fda.gov/drugsatfda_docs/label/2011/020732s006s007lbl.pdf (last visited 12/19/2018).

(despite the availability of a room for her to do so). Hospital personnel communicated all of this information to the Clinton County Children and Youth Social Services Agency ("CYS").

On February 7, 2017, CYS sought and was granted emergency protective custody of Child. The juvenile court held a shelter hearing on February 10, 2017 and ordered Child to remain in CYS' care. CYS then filed a dependency petition alleging that (1) Child was "without proper parental care or control … as required by law" pursuant to section 6302(1) of the Juvenile Act (42 Pa.C.S. §§ 6301-6375), and (2) that Child was a victim of child abuse by a perpetrator as defined by section 6303(b.1)(1) of the CPSL in that Mother "caus[ed] bodily injury to a child through any recent act or failure to act." Dependency Petition, 2/13/2017, at 3, 5. The child abuse allegation was based on Child's hospitalization for nineteen days, during which Child "suffer[ed] from withdrawal due to substances Mother ingested while Mother was pregnant with her." *Id.* at 5. The juvenile court continued the initial dependency hearing because of its concern that Mother and J.W.B. ("Father") did not receive proper notice. Prior to the rescheduled hearing, CYS filed another dependency petition containing the same allegations of dependency and child abuse, but adding information concerning visits between the parents and Child and Mother's admitted continued drug use.

On March 15, 2017, by agreement of the parties, the juvenile court adjudicated Child dependent pursuant to section 6302(1) of the Juvenile Act. It deferred to a separate proceeding the question of whether Mother's drug use while pregnant constituted child abuse, and ordered the parties to file memoranda of law for the court's review.

CYS filed its brief in support of a finding of child abuse on March 23, 2017, therein averring that Mother's conduct satisfied subsections (1) and (5) of the definition of "child abuse" in that her "recent act" caused or created a reasonable likelihood of causing bodily injury to Child. *See* 23 Pa.C.S. § 6303(b.1) (1), (5); *supra*, p. 3. Mother filed a memorandum of law the following day, asserting that the CPSL does not protect a fetus or unborn child, and thus Mother's actions could not be deemed child abuse as a matter of law.

The juvenile court held argument on May 9, 2017. After taking the matter under advisement, it issued an opinion and order, agreeing with Mother that "the law does not provide for [a] finding of abuse due to actions taken by an individual upon a fetus." Juvenile Court Opinion, 5/24/2017, at 4. It thus held that CYS "cannot establish child abuse in this matter on the actions committed by Mother while [C]hild was a fetus." Juvenile Court Order, 5/24/2017, ¶ 1.

CYS appealed to the Superior Court, which reversed. In a unanimous opinion, the court found, "Under the plain language of the statute, Mother's illegal drug use while pregnant may constitute child abuse if the drug use caused bodily injury to Child." *In re L.B.*, 177 A.3d 308, 311 (Pa. Super. 2017). Although agreeing with Mother (and CYS) that the definition of "child" in the CPSL does not include a fetus or unborn child, it found that "Mother's drug use is a 'recent act or failure to act' under 6303(b.1)(1) and (5)," and that her conduct caused or was reasonably likely to cause injury to Child who, now born, constituted a "child." *Id.* It therefore held "that a mother's use of illegal drugs while pregnant may constitute child abuse under the CPSL if CYS establishes that, by using the illegal drugs, the mother intentionally, knowingly, or recklessly caused, or created a

reasonable likelihood of, bodily injury to a child **after** birth." *Id.* at 309 (emphasis in original).

Senior Judge Eugene B. Strassburger authored a concurring opinion, which the majority author joined. Judge Strassburger joined the majority opinion, agreeing that "the language of the statute" required that result. He wrote separately to express his concern of "whether treating as child abusers women who are addicted to drugs results in safer outcomes for children," as this could cause a pregnant woman to avoid a hospital, fail to seek prenatal care, or decide not to pursue treatment for her addiction. *L.B.*, 177 A.3d at 313-14 (Strassburger, J., concurring). He also acknowledged that the majority's holding could easily be extended to other areas of a pregnant woman's decision making (e.g., drinking coffee, traveling, eating sushi, or undergoing cancer treatment). Judge Strassburger expressed doubt that the General Assembly intended for actions taken by a woman prior to her child's birth to constitute "child abuse," but ultimately agreed with the majority that this is the interpretation that the language of the statute required. *Id.* at 315.

Mother timely appealed to this Court, and we granted review of the following issues:

> (1) Does [the CPSL] allow a mother be found a perpetrator of "child abuse" in the event she is a drug addict while her child is a fetus[?]
>
> (2) Is the intent of 23 Pa.C.S. § 6386 limited to providing "protective services" to addicted newborns and their families and not so expansive to permit alcoholic or addicted mothers be found to have committed child abuse while carrying a child in her womb[?]

*In Interest of L.J.B.*, 183 A.3d 971, 972 (Pa. 2018) (per curiam).

This case presents questions of statutory interpretation for which our standard of review is de novo. *Commonwealth v. Fant*, 146 A.3d 1254, 1260 (Pa. 2016). A court's role when interpreting a statute is to determine the intent of the General Assembly so as to give it its intended effect. 1 Pa.C.S. § 1921(a). "In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning." *In re L.B.M.*, 161 A.3d 172, 179 (Pa. 2017); *see also* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Mother and her amici[5] forward various arguments to this Court in support of reversing the Superior Court's decision. As we must, we begin by addressing the arguments aimed at the plain language of the statute. Mother contends that pursuant to the clear and unambiguous language of the CPSL, she did not commit "child abuse" while she was pregnant because there was no "child," and she therefore was not a "perpetrator," at the time she committed the act in question. *See* Mother's Brief at 12-21; 23 Pa.C.S. § 6303(a), (b.1). *See also* ACLU and FMF Amici Brief at 6-8. She observes

---

[5] Amicus briefs were filed in support of Mother by (1) American Civil Liberties Union of Pennsylvania ("ACLU") and Feminist Majority Foundation ("FMF"); (2) Frederick M. Henretig, M.D., Hallam Hurt, M.D., Juvenile Law Center, KidsVoice, Philadelphia Department of Human Services, and Support Center for Child Advocates; (3) The Drug Policy Alliance, Families for Sensible Drug Policy; Avik Chatterjee, M.D., M.P.H., Keith Humphreys, Ph.D., Hendrée Jones, Ph.D., Stephan R. Kandall, M.D., F.A.A.P., Mishka Terplan, M.D., M.P.H., F.A.C.O.G, D.F.A.S.A.M., Bruce Trigg, M.D., Michael S. Wald, J.D., and Tricia E. Wright, M.D., M.S.; and (4) National Advocates for Pregnant Women, Community Legal Services of Philadelphia, and Experts in Maternal and Child Health, Child Welfare, and Law.

that section 6386 of the CPSL requires medical personnel to report to CYS when a child is born, inter alia, experiencing withdrawal symptoms because of prenatal drug exposure.[6] She argues, however, that the CPSL neither requires nor permits a finding of "child abuse" on this basis, again pointing to the pertinent definitions of section 6303, as well as failed amendments to the statute that would have made her conduct "child abuse"

---

[6] At the time the parties submitted their briefs in this matter, section 6386 was titled "Mandatory reporting of children under one year of age," and provided as follows:

> **(a) When report to be made.--**A health care provider shall immediately make a report or cause a report to be made to the appropriate county agency if the provider is involved in the delivery or care of a child under one year of age who is born and identified as being affected by any of the following:
>> (1) Illegal substance abuse by the child's mother.
>> (2) Withdrawal symptoms resulting from prenatal drug exposure unless the child's mother, during the pregnancy, was:
>>> (i) under the care of a prescribing medical professional; and
>>> (ii) in compliance with the directions for the administration of a prescription drug as directed by the prescribing medical professional.
>> (3) A Fetal Alcohol Spectrum Disorder.
>
> **(b) Safety or risk assessment.--**The county agency shall perform a safety assessment or risk assessment, or both, for the child and determine whether child protective services or general protective services are warranted.
>
> **(c) County agency duties.--**Upon receipt of a report under this section, the county agency for the county where the child resides shall:
>> (1) Immediately ensure the safety of the child and see the child immediately if emergency protective custody is required or has been or shall be taken or if it cannot be determined from the report whether emergency protective custody is needed.
>> (2) Physically see the child within 48 hours of receipt of the report.
>> (3) Contact the parents of the child within 24 hours of receipt of the report.
>> (4) Provide or arrange reasonable services to ensure the child is provided with proper parental care, control and supervision.

23 Pa.C.S. § 6386 (amended effective Oct. 2, 2018).

(but did not). *See* Mother's Brief at 21-28; 23 Pa.C.S. § 6386. According to Mother, a finding of child abuse based on harm caused by a mother's ingestion of narcotics during pregnancy also contradicts the stated purpose of the CPSL because it would do nothing to protect children from "further abuse," as this form of "abuse" is not repeatable against the child. *See* Mother's Brief at 29-30; 23 Pa.C.S. § 6302 (stating, in pertinent part, that one of the purposes of the CPSL is "providing protection for children from further abuse").

In response, CYS does not address Mother's assertion that she cannot be a "perpetrator" as defined by the CPSL. Instead, it points to section 6386 and its contemplation that the county agency may institute "child protective services" following its safety assessment after receiving a report from a healthcare provider that a child was born affected by prenatal drug exposure. Because "child protective services" are only instituted in cases of child abuse, CYS reasons that the General Assembly intended for drug use while pregnant to constitute an act that could be deemed child abuse once the child is born affected by his or her prenatal exposure to drugs. *See* CYS' Brief at 5-9; 23 Pa.C.S. § 6303(a) (defining "child protective services" as "services and activities provided by the department and each county agency for child abuse cases"). CYS further contends that a finding of child abuse in this circumstance aligns with the legislative intent provided in section 6302 of the CPSL because Mother "may well be pregnant again in the future." It asserts, without explanation, that a finding that Mother abused Child by using illegal drugs while pregnant would somehow "protect these children as well." CYS' Brief at 12-13.

As stated hereinabove, a "perpetrator" is "[a] person who has committed child abuse" under the CPSL. 23 Pa.C.S. § 6303(a). Thus, at the time the individual committed

the act that caused or was reasonably likely to have caused bodily injury to a child, he or she must have been a "perpetrator," as defined. The delineation of each individual who is permissibly identified as "perpetrator" under the CPSL is based on his or her relationship to a "child" – in Mother's case, as "[a] parent of a child." *See id.*, § 6303(a)(1). Reading the clear and unambiguous language of the relevant definitions together, a person cannot have committed child abuse unless he or she was a perpetrator, and a person cannot be a perpetrator unless there is a "child" at the time of the act. *See* 23 Pa.C.S. § 6303(a), (b.1).

In the case at bar, however, the act alleged (ingesting opioids) occurred when Mother was pregnant. As the parties agree, and the Superior Court found, the CPSL's definition of a "child" does not include a fetus or an unborn child. By its plain language, a "child" is a person who is under eighteen years of age. *See* 23 Pa.C.S. § 6303(a). Had the General Assembly intended to include a fetus or unborn child under the protections of the CPSL, it would have done so, just as it has in other statutory schemes. *See, e.g.,* 18 Pa.C.S. §§ 2601-2609 (Crimes Against the Unborn Child Act); 18 Pa.C.S. §§ 3201-3220 (Abortion Control Act). "We are bound by the unambiguous language of the statute and cannot read language into it that simply does not appear." *Commonwealth v. Vasquez*, 753 A.2d 807, 809 (Pa. 2000). As such, Mother cannot be found to have committed child abuse against Child based on her illegal drug use while pregnant because she was not a "perpetrator" at the time of the act.

The Superior Court never considered the definition of "perpetrator" when arriving at its conclusion that Mother's actions while pregnant could constitute "child abuse." Instead, it focused, almost exclusively, on the fact that Mother's drug use occurred within

two years of Child's birth, which, in its view, constituted a "recent act" under the CPSL. *See In re L.B.*, 177 A.3d at 311. By reaching back to consider conduct while Mother was pregnant, the Superior Court failed to account for the fact that at any time prior to the birth of Child, Mother could not be a perpetrator of child abuse because a perpetrator must be "the parent of a child." 23 Pa.C.S. § 6306(a)(1)(i). The Superior Court thus created a statutory relationship between a pregnant woman and a fetus that the CPSL does not recognize. Language was available to the General Assembly to create a category of child abuse to address this scenario, but it did not, and we must consider this omission as part of the legislative intent.[7] *See Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001) ("As a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say."). The plain language of the CPSL requires the existence of a child at the time of the allegedly abusive act in order for the actor to be a "perpetrator" and for the act to constitute "child abuse." The fact that the actor, at a later date, becomes a person who meets one of the statutorily-defined categories of "perpetrator" does not bring her earlier actions – even if committed within two years of the child's bodily injury – under the CPSL.[8]

---

[7] In fact, we note that in 2011, Senator Patricia H. Vance proposed an amendment to section 6303's definition of "child abuse" to account for this very behavior by adding, "It shall be considered child abuse if a child tests positive at birth for a controlled substance as defined in section 2 of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, unless the child tests positive for a controlled substance as a result of the mother's lawful intake of the substance as prescribed." S.B. 735, Printer's No. 761, Reg. Sess. (Pa. 2011). The bill was referred to the Senate Aging and Youth Committee on March 7, 2011, but it was never considered or voted upon by the full Senate.

[8] The status of a "perpetrator" must be acquired at the time of the abusive act to give effect to the legislative intention in other contexts under the CPSL. For example: a twelve-year-old boy intentionally breaks the arm and leg of his ten-year-old brother who

We also find CYS' reliance on section 6386 of the CPSL to be misplaced. As noted hereinabove, the version of section 6386 in effect at the time of Child's birth did not use the phrase "child abuse," nor did it mention, cross-reference, or purport to modify section 6303. *See supra*, note 6. Instead, it created a protocol to be fulfilled by healthcare professionals when a baby was born experiencing withdrawal symptoms because of prenatal drug exposure and corresponding responsibilities in the county agency. *See* 23 Pa.C.S. § 6386 (amended Oct. 2, 2018).

After performing a safety and/or risk assessment, the statute gave the county agency an option if it found that the family required agency involvement: in cases involving child abuse, to institute child protective services, or otherwise to institute general

---

lives in the same household. The twelve-year-old boy does not become a "perpetrator" once he turns fourteen even though "[a]n individual 14 years of age or older who resides in the same home as the child" is a "perpetrator" and, in our example, his act occurred within two years. *See* 23 Pa.C.S. § 6303(a)(1)(v), (b.1)(1). In choosing the age of fourteen to define a perpetrator in this subsection, the General Assembly made a policy decision as to the appropriate age to trigger a finding that the actor committed child abuse. The same type of policy decision was made by the General Assembly in requiring a parent-child relationship and not a pregnant woman-unborn child relationship in section 6303(a)(1)(i).

The Dissent is of the view that a person need only be a perpetrator at the time the injury to the child manifests, not at the time of the act that causes the injury. *See* Dissenting Op. at 2. Respectfully, this ignores the aforementioned policy decision of the General Assembly as to who is a perpetrator. Modifying the above example, take instead a twelve-year-old boy who intentionally strikes his younger brother in the head with a baseball bat. No injury is initially apparent, but two years later the younger brother develops a massive brain hemorrhage that was caused by his brother's act. Under the Dissent's interpretation, the now-fourteen-year-old is labeled a perpetrator for the act committed when he was twelve. This, respectfully, is an absurd result given the General Assembly's clear definition of the term. The General Assembly made it abundantly clear that fourteen is the age that triggers the designation of "perpetrator" under section 6303(a)(1)(v) CPSL. It likewise made clear that a parent of a child, not a woman pregnant with an unborn child, triggers the designation of "perpetrator" under the CPSL.

protective services. *See id.*, § 6386(b). Contrary to CYS' argument, section 6386 cannot be read to require that the birth of a child experiencing symptoms of NAS means that the mother who gave birth is a perpetrator of child abuse. The definition of perpetrator in section 6303 precludes the institution of child protective services based solely on a newborn's drug exposure in utero because, as discussed above, the General Assembly did not intend for this to constitute child abuse. *See Olson v. Kucenic*, 133 A.2d 596, 598 (Pa. 1957) ("In interpreting a statute it must be construed as an integral part of the whole structure affected and not as a separate matter having an independent meaning of its own."); *Commonwealth v. Smith*, 186 A.3d 397, 402 (Pa. 2018) (when discerning legislative intent, "we do not read words in isolation, but with reference to the context in which they appear").[9] We observe that safety and risk assessments require the county agency to investigate both the subject child and any other children who live in the child's household. *See* 23 Pa.C.S. § 6368(c)(1) (providing that investigation of reports by the county agency requires "[a] determination of the safety of or risk of harm to the child and

---

[9] The General Assembly's recent amendment to section 6386 resolves any ambiguity that may have arisen from the language used in the prior version of section 6386 entirely. In July 2018, the General Assembly completely overhauled section 6386, and the amended version took effect on October 2, 2018. The amendment changes the title of the statute to "Notification to department and development of plan of safe care for children under one year of age." It further adds subsection (a.1), which states, "The notification by a health care provider to the department and any transmittal to the county agency by the department shall not constitute a child abuse report," and removes reference to the county agency instituting "child protective services" based on notification from hospital personnel that a baby was born affected by prenatal drug exposure. *See* 23 Pa.C.S. § 6386(a.1). A large portion of the statute is now dedicated to the "[d]evelopment of interagency protocols and plan of safe care" to ensure that the child's needs, as well as those of the child's parents and immediate caregivers, are appropriately met. *See id.*, § 6386(b.1). This provision even contemplates that "[o]ngoing involvement of the county agency after taking into consideration the individual needs of the child and the child's parents and immediate caregivers may not be required." *Id.*, § 6386(b.1)(2).

any other child if each child continues to remain in the existing home environment"). Reading the provisions of the CPSL together and giving effect to every provision contained in these statutes, as our Rules of Statutory Construction require, "child protective services" could be instituted after notification that a child was born experiencing symptoms of withdrawal if the county agency discovered, through its risk and/or safety assessment, indicia of child abuse as it relates to other children in the home. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

Further, CYS' argument that a finding of abuse under the circumstances of this case somehow protects future children from abuse lacks any support in law or in fact. As stated above, the CPSL was enacted because of the General Assembly's finding that "[a]bused children are in urgent need of an effective child protective service to prevent them from suffering **further injury and impairment**." *Id.*, § 6302(a) (emphasis added). Its purpose is to protect the abused child and other children from suffering further abuse at the perpetrator's hands. *Id.*, § 6302(b). Labeling a woman as a perpetrator of child abuse does not prevent her from becoming pregnant or provide any protection for a later conceived child while in utero. It also does not ensure that the same woman will not use illegal drugs if she does again become pregnant. Moreover, once labeled as a perpetrator of child abuse, the likelihood that a new mother will be able to assimilate into the workforce and participate in activities of the child's life would be diminished. This would contravene the laudatory goal of preserving family unity and a supportive environment for the child.

Mother's act of ingesting opioids while pregnant did not constitute child abuse. We therefore reverse the decision of the Superior Court and remand the matter for reinstatement of the trial court's order.

Justices Baer and Wecht join the opinion.

Chief Justice Saylor files a concurring opinion in which Justice Dougherty joins.

Justice Dougherty files a concurring opinion.

Justice Mundy files a dissenting opinion in which Justice Todd joins.