**[J-41A-2023 and J-41B-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | |
|---|---|
| IN THE INTEREST OF: N.E.M.  APPEAL OF: N.E.M., A CHILD IN CUSTODY | : No. 8 EAP 2023<br>:<br>: Appeal from the Order of Superior<br>: Court entered on September 28,<br>: 2022 at No. 86 EDM 2022 affirming<br>: the Order entered on August 11,<br>: 2022 in the Court of Common Pleas,<br>: Philadelphia County, Juvenile<br>: Division at CP-51-JV-0000789-2022<br>:<br>: SUBMITTED:  August 25, 2023 |
| IN THE INTEREST OF: N.E.M.  APPEAL OF: N.E.M., A CHILD IN CUSTODY | : No. 9 EAP 2023<br>:<br>: Appeal from the Order of Superior<br>: Court entered on September 28,<br>: 2022 at No. 87 EDM 2022 affirming<br>: the Order entered on August 11,<br>: 2022 in the Court of Common Pleas,<br>: Philadelphia County, Juvenile<br>: Division, at C-51-JV000789-2022<br>:<br>: SUBMITTED:  August 25, 2023 |

**OPINION**

**JUSTICE DONOHUE**                                              **DECIDED: March 21, 2024**

N.E.M. was adjudicated delinquent and ordered to be placed in an out-of-home detention facility.  Following this placement, N.E.M. filed a petition for specialized review as provided for by Pennsylvania Rule of Appellate Procedure 1612 ("Appellate Rule 1612"),[1] which provides a mechanism for the immediate appeal of out-of-home

_____

[1] Pa.R.A.P. 1612.  The rule was initially published as Pa.R.A.P. 1770.  In 2020, it was renumbered Rule 1612.

placements. The Superior Court denied N.E.M.'s petition in a per curiam order. We granted discretionary review to consider whether juveniles have a right to review under Appellate Rule 1612 and whether denial of N.E.M.'s Appellate Rule 1612 petition by per curiam order effectively amounted to a denial of the review provided for by that rule. We answer both questions in the affirmative.

**The Rules at Issue**

Various rules of court are at issue in these appeals. We begin with a discussion of them to provide a frame of reference for the discussion that follows.

Pennsylvania Rule of Juvenile Court Procedure 512 ("Rule 512") governs dispositional hearings. Rule 512 is detailed and thorough. It provides comprehensive guidelines to which juvenile courts must adhere in a dispositional hearing; for instance, that the court must receive evidence from both parties, give the juvenile and victim opportunities to be heard, and that an attorney for the Commonwealth must be present. Pa.R.J.C.P. 512(A). Other subsections require that the hearing be recorded and that there be a colloquy and inquiry of post-disposition rights after the court announces the disposition in open court. Pa.R.J.C.P. 512(B),(C). The Rule directs that the colloquy must be in writing and that it must be "substantially" in the form of a template provided within the Rule. *Id.* Of relevance to the case presently before us, Subsection D addresses the findings that the court is obligated to make on the record. It provides:

> **D. Court's Findings.** The court shall enter its findings and conclusions of law into the record and enter an order pursuant to Rule 515. On the record in open court, the court shall state:
>
> (1) its disposition;
>
> (2) the reasons for its disposition;
>
> (3) the terms, conditions, and limitations of the disposition; and

(4) if the juvenile is removed from the home:

> (a) the name or type of any agency or institution that shall provide care, treatment, supervision, or rehabilitation of the juvenile;

> (b) its findings and conclusions of law that formed the basis of its decision consistent with 42 Pa.C.S. §§ 6301 and 6352, including why the court found that the out-of-home placement ordered is the least restrictive type of placement that is consistent with the protection of the public and best suited to the juvenile's treatment, supervision, rehabilitation, and welfare; and

> (c) the provision of educational services for the juvenile pursuant to Rule 148;

(5) whether any evaluations, tests, counseling, or treatments are necessary;

(6) any findings necessary to ensure the stability and appropriateness of the juvenile's education, and when appropriate, the court shall appoint an educational decision maker pursuant to Rule 147; and

(7) any findings necessary to identify, monitor, and address the juvenile's needs concerning health care and disability, if any, and if parental consent cannot be obtained, authorize evaluations and treatment needed.

Pa.R.J.C.P. 512(D).

Rule of Juvenile Court Procedure 515, "Dispositional Order" ("Rule 515"), requires the juvenile court to issue a written order following an adjudication of delinquency and delineates what the court must include in that order. First among the content requirements is "the courts findings pursuant to Rule 512(D)[.]" Pa.R.J.C.P. 515(a)(1).[2]

---

[2] Rule 515 provides :

> (a) Generally. When the court enters a disposition after an adjudication of delinquency pursuant to Rule 409(A)(2), the court shall issue a written order in accordance with 42

(continued…)

Pa.C.S. § 6352, which the court has determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, accountability for the offenses committed, and development of the juvenile's competencies to enable the juvenile to become a responsible and productive member of the community. The order shall include:

(1) the court's findings pursuant to Rule 512(D), including any conditions of probation that, if not enumerated in the order, shall be attached to the order;

(2) a designation whether the case is eligible pursuant to 42 Pa.C.S. §6307(b)(1.1)(i) for limited public information;

(3) a directive that the juvenile shall submit to fingerprinting and photographing by, or arranged by, the law enforcement agency that submitted the written allegation in all cases in which the juvenile has not previously been fingerprinted or photographed;

(4) the date of the order; and

(5) the signature and printed name of the judge entering the order.

(b) Financial Obligations. If the court orders the payment of fines, costs, fees, or restitution, pursuant to 42 Pa.C.S. § 6352(a)(5) and (6), the amounts shall be reasonable and as deemed appropriate as part of a plan of rehabilitation considering the nature of the acts committed and the earning capacity of the juvenile. The dispositional order shall include:

(1) the specific amounts of fines, costs, fees, or restitution to be paid by the juvenile;

(continued…)

Appellate Rule 1612 is titled "Review of Out-of-Home Placement in Juvenile Delinquency." It provides that when a court orders a juvenile who has been adjudicated delinquent to be placed in an out-of-home agency or institution, the juvenile "may file a petition for specialized review" within ten days of the order. Pa.R.A.P. 1612(a). The Rule's remaining subsections delineate the content requirements for the petition, the reviewing court's scope of review, the timeframe for the filing of a response, service requirements, a requirement for the transcription of notes of testimony within five days of the filing of a petition, and a provision that the failure of a juvenile to utilize the Appellate Rule 1612 review procedure does not result in the waiver of the right to otherwise seek review of the placement. *See* Pa.R.A.P. 1612(b),(c),(d),(e),(g),(h). For our purposes, we draw particular attention to Subsection (f), "Opinion of juvenile court," which states that when the juvenile court fails to state its reasons for the placement on the record at the time of the disposition as required by Rule 512, the juvenile court must file a statement of the reasons for its disposition within five days of the date the juvenile files an Appellate Rule 1612 petition. *See* Pa.R.A.P. 1612(f).

---

(2) to whom each of the financial obligations shall be paid; and

(3) a payment schedule based upon the juvenile's ability to pay according to the dispositional order.

(c) Guardian Participation. The dispositional order shall include any conditions, limitations, restrictions, and obligations imposed upon the guardian.

(d) Disposition Reporting. The court shall forward the case disposition to the Juvenile Court Judges' Commission, as required by the Commission.

Pa.R.J.C.P. 515.

**Background**

This case begins on June 21, 2022, the day N.E.M. was arrested and charged with two delinquency petitions related to conduct that occurred on May 19 and 20, 2022. The petitions alleged that on May 19, while attempting to enter High Road School, N.E.M. broke a glass door, threw a lit cigarette at the school's principal and threatened school staff members. Delinquency Petition, CP-51-JV-0000789-2022, at 1. On May 22, 2022, N.E.M. was accused of punching a man in the face before driving away in the man's car. Delinquency Petition, CP-51-JV-0000790-2022, at 1. For both incidents N.E.M. was charged with aggravated assault, simple assault, possession of an instrument of crime, terroristic threats, criminal mischief, robbery, carjacking, theft by unlawful taking, receiving stolen property, recklessly endangering another person, and unauthorized use of an automobile.[3] Following his arrest, N.E.M. was placed in a juvenile detention center and an adjudicatory hearing was scheduled for July 1, 2022. Juvenile Court Order, 6/22/2022.

Prior to the adjudicatory hearing, N.E.M. and the Commonwealth reached an agreement pursuant to which N.E.M. would admit to simple assault, criminal mischief, robbery and theft in exchange for the withdrawal of the other charges and immediate release from detention to house restriction with a GPS monitoring bracelet. At the adjudicatory hearing, counsel for N.E.M. informed the juvenile court of the terms of the negotiated agreement and the Commonwealth expressed its support for the agreement. N.E.M. admitted to the charges, as per the terms of the agreement. N.E.M.'s counsel explained that N.E.M. had no prior involvement with the delinquency system and that both incidents occurred during psychotic episodes. Nonetheless, the juvenile court rejected the admissions and refused to release N.E.M. from custody. N.E.M moved to withdraw his admissions, which the court refused. The court subsequently issued orders

---

[3] 18 Pa.C.S. §§ 2702, 2701, 907, 2706, 3304, 3701, 3702, 3921, 3925, 2705, 3928.

adjudicating N.E.M. delinquent and scheduling a dispositional hearing for July 11, 2022. Juvenile Court Order, 7/1/2022, at 1-2.

At the dispositional hearing, counsel for N.E.M. and the Commonwealth urged the court to reconsider its rejection of the negotiated agreement, but it refused. The court explained that it found the release of N.E.M. to his home inappropriate because of the severity of the misconduct at issue. Accordingly, the juvenile court ordered that N.E.M. be placed outside of the home. N.T., 7/11/2022, at 8. The final dispositional hearing occurred one month later, at the conclusion of which the juvenile court ordered that N.E.M. be committed to a Department of Public Welfare residential facility. Juvenile Court Order, 8/11/2022, at 1. At neither hearing did the juvenile court receive evidence concerning N.E.M.'s alleged misconduct, nor did it state its reasons for placing N.E.M. out-of-home on the record. The court never explained its reasons for this disposition in a written order. These failures violate the mandates of Rule 512(D).

On August 22, 2022, N.E.M. filed an Emergency Petition for Specialized Review of Out-of-Home Placement in Juvenile Delinquency Matter Pursuant to Pa.R.A.P. 1612 ("Petition for Specialized Review") at each docket number. In the petitions, N.E.M. developed five arguments as to how the juvenile court abused its discretion in its placement determination. Petitions for Specialized Review, 8/22/2022, at 7-24.[4] These were followed on September 1, 2022 by applications in which N.E.M. asked the Superior Court to consolidate his appeals. On September 28, 2022, the Superior Court entered

---

[4] N.E.M. argued that the juvenile court abused its discretion in ordering out-of-home placement because (1) home release was a condition of his agreement to tender negotiated admissions; (2) the disposition was entered with insufficient fact finding or inquiry into his individual needs; (3) the disposition was not the least restrictive intervention nor suited to N.E.M.'s particular treatment, supervision, rehabilitation or welfare; (4) the disposition was selected primarily to punish rather than rehabilitate N.E.M.; and (5) the disposition was made in violation of protections afforded by the Rules of Juvenile Court Procedure and the state and federal constitutions. *See* Petitions for Specialized Review, 8/22/2022, at 7-8.

identical per curiam orders stating, in their entirety, that the Petitions for Specialized Review were denied and further denied N.E.M.'s requests to consolidate the petitions as moot. A petition for allowance of appeal to this Court followed, which we granted.

This issue as presented by N.E.M. and accepted by this Court for review is not a model of clarity:

> Did not the Superior Court err in denying the [Petitions for Specialized Review] under Pa.R.A.P. 1612 without issuing a memorandum opinion where [N.E.M.] had a right to review, such review falls under the abuse of discretion standard, and the juvenile court failed to make a record of its reasons or issue an opinion for the Superior Court to review?

*In the Interest of N.E.M.*, 294 A.3d 302 (Pa. 2023) (per curiam). N.E.M. argues two points that are fairly encompassed within his stated question: (1) the Superior Court lacks discretion to decide whether to grant or deny a petition for specialized review filed pursuant to Appellate Rule 1612, as it must grant the petition and decide the appropriateness of the out-of-home placement; and (2) when a juvenile court fails to state its reasons for the out-of-home placement on the record and fails to issue an opinion stating the reasons for such placement, the Superior Court must issue a written decision supporting its disposition of the merits of the out-of-home placement. Resolution of these questions requires us to interpret Appellate Rule 1612 and the Superior Court's application of that rule. "The proper interpretation of a rule presents a question of law and our standard of review is de novo. Our scope of review, to the extent necessary to resolve the legal question before us, is the entire record and is thus plenary." *In re Est. of Krasinski*, 218 A.3d 1246, 1251 (Pa. 2019) (citing *Touloumes v. E.S.C. Inc.*, 899 A.2d 343, 346 n.4 (Pa. 2006)).

**Mootness**

N.E.M. was released from placement in May 2023, which renders his appeals technically moot. The mootness doctrine requires that an actual case or controversy exist

"at all stages of review, not merely at the time the complaint is filed." *In re Gross*, 382 A.2d 116, 119 (Pa. 1978). Our Court has recognized several limited exceptions to the mootness doctrine that permit our review of otherwise moot issues:

> Exceptions to this principle are made where the conduct complained of is capable of repetition yet likely to evade review, where the case involves issues important to the public interest[,] or where a party will suffer some detriment without the court's decision.

*Pub. Def. Off. of Venango Cnty. v. Venango Cnty. Ct. of Common Pleas*, 893 A.2d 1275, 1279-80 (Pa. 2006) (citing *Sierra Club v. Pa. Pub. Util. Comm'n*, 702 A.2d 1131, 1135 (Pa. Commw. 1997), *aff'd*, 731 A.2d 133 (Pa. 1999)). The instant case furnishes a clear example of an issue that is "capable of repetition yet evading review." *Commonwealth v. Dixon*, 907 A.2d 468, 472 (Pa. 2006) (citing *Commonwealth v. Baker*, 766 A.2d 328, 330 n. 4 (Pa. 2001)). Indeed, in support of this notion, N.E.M. cites three cases that were rendered moot because of the juvenile's release before the conclusion of the direct appeal. N.E.M.'s Brief at 34 n.8.[5] In *Wiest v. Mt. Lebanon School District*, 320 A.2d 362 (Pa. 1974), this Court concluded that where members of a graduating class challenged a commencement program as violative of the United States and Pennsylvania Constitutions, an appeal would not be dismissed when there was only a ten-day period between the announcement of the commencement program and the commencement exercises. Although the litigants were graduates when the appeal was heard, we understood that the short time between the announcement and the exercises would effectively deny appellate review of that type of litigation. *See id.* at 364 n. 1. We recognize a similar temporal restriction with the orders at issue in these appeals.

---

[5] *See In re R.D.*, 44 A.3d 657, 680 (Pa. 2012); *In Int. of McDonough*, 430 A.2d 308, 313 (Pa. Super. 1981); *In Int. of DelSignore*, 375 A.2d 803, 807 (Pa. Super. 1977). N.E.M. further referenced the existence of three unpublished decisions in which the issue was rendered moot by the juvenile's release from placement.

Moreover, the issue involved is undoubtedly one of important public interest, as it asks whether juveniles have a right to expedited review of placements that take them out of their homes and into institutions. We therefore conclude that the issue presented satisfies these exceptions to the mootness doctrine. Accordingly, we address the merits of N.E.M.'s appeal.[6]

### Parties' Arguments

N.E.M.'s argument consists of two main points. First, he argues that the Superior Court erroneously treats petitions filed pursuant to Appellate Rule 1612 as requests for discretionary review. Second, N.E.M. argues that for the review afforded by Appellate Rule 1612 to be meaningful, the Superior Court must do more than issue a per curiam order that simply affirms or denies the placement without explanation.

N.E.M. premises his argument that review pursuant to Appellate Rule 1612 is mandatory on the fact that it and Rule 512 were adopted as a result of the Luzerne County "kids for cash" scandal.[7] He explains that in 2009, our General Assembly created the Interbranch Commission on Juvenile Justice (the "Commission"), to reform the juvenile justice system to offer protections against the abuses that fueled the scandal. The Commission's work culminated in a report (the "Commission Report") that included

---

[6] Both the Commonwealth and N.E.M. advocate for a finding that these appeals have not been rendered moot. *See* N.E.M.'s Brief at 38-39; Commonwealth's Brief at 15-16.

[7] This was a judicial corruption scandal that involved the payment of millions of dollars to two Luzerne County judges in exchange for the placement of juveniles who had been adjudicated delinquent in two privately-owned detention facilities. The placements often occurred without regard for, and in direct violation of, the juveniles' constitutional rights. For example, the court routinely failed to advise juveniles of their right to counsel. *See* Associated Press, Former Judges Who Sent Kids to Jail for Kickbacks Must Pay More than $200 Million (Aug. 18, 2022), https://www.npr.org/2022/08/18/1118108084/michael-conahan-mark-ciavarella-kids-for-cash. The violations of rights were found to be so extensive that this Court vacated all adjudications that occurred between 2003 and 2008 and the expungement of those records. *See id.* The judges at the center of the scandal, Mark A. Ciavarella Jr. and Michael T. Conahan, were convicted of multiple federal crimes as a result.

recommendations related to juvenile placement decisions and appellate review of those decision. N.E.M.'s Brief at 14-15, 22. From the Commission's recommendations, N.E.M. explains, this Court promulgated various rules and the General Assembly enacted Section 6352(c) of the Juvenile Act, which together "create an interconnected system designed to ensure that juvenile courts considered certain required factors before making the decision to remove a child from the home." *Id.* at 15-16.

As for the mechanics of this system, N.E.M. highlights the consistency between Rule 512(D) and the relevant provisions of the Juvenile Act. Rule 512(D)(4)(b) mandates that if the disposition requires the juvenile to be removed from the home, the court must state, on the record in open court, the findings and conclusions of law that formed the basis for its decision. Section 6352(c) echoes Rule 512, as it requires that a juvenile court must announce the disposition and the reasons therefore on the record in open court, and that if the child is removed from the home, that the court state its findings and conclusions that formed the basis of its decision, including an explanation as to why it determined that commitment to the chosen facility was the least restrictive placement to balance protection of the public with the child's needs for rehabilitation, supervision, treatment and welfare. *Id.* at 21. "Taken together," N.E.M. argues, these provisions "inform and cabin the juvenile court's exercise of discretion in issuing dispositional orders." *Id.*

Beyond obligations on the juvenile courts, N.E.M. also points out that the Commission recommended the creation of an avenue of appeal in order to "provide[] an aggrieved party an opportunity to seek review … and provide[] a mechanism to correct legal and procedural errors[.]" *Id.* at 22 (quoting Commission Report at 54-55). He explains that in response to this recommendation, this Court adopted Appellate Rule 1612 specifically to provide an expedited appeal of out-of-home placements. *Id.* He highlights

Subsection (f), which requires the juvenile court to provide a statement of reasons for the disposition if the court failed to do so in open court, as required by Rule 512(D). *Id.* at 24. In N.E.M.'s view, Subsection (f) guarantees that there is a record for the Superior Court so that that court can provide meaningful appellate review. *Id.*

In support of his claim that the review provided for by Appellate Rule 1612 is mandatory, N.E.M. points out that in both published opinions from the Superior Court that involve this process, the court stated that it granted the request for expedited review separately from its ultimate disposition of that review, *id.* at 27 (citing *In re D.W.*, 220 A.3d 573, 574 (Pa. Super. 2019); *Commonwealth v. K.M.-F.*, 117 A.3d 346, 349 (Pa. Super. 2015)), and that in his case, the orders merely denied his petitions for specialized review.[8] The denial of the petitions in this manner, he argues, reveals the Superior Court's view that it retains the discretion to decide whether to perform the specialized review. *Id.*

Employing tenets of statutory construction, N.E.M. argues that Appellate Rule 1612 "promises" a right to review by the Superior Court. For instance, he explains that Chapter 16 of the Rules of Appellate Procedure was created in 2020 to provide a procedure for review of certain discrete issues that do not fall under Chapters 9 (Appeals from Lower Courts), 11 (Appeals from Commonwealth Court and Superior Court), 13 (Interlocutory Appeals by Permission), or 15 (Judicial Review of Governmental Determinations). Accordingly, some rules were renumbered and placed in Chapter 16. On the other hand, rules that were more akin to petitions for allowance of appeal were moved to Chapter 13. The fact that Rule 1770 was placed in Chapter 16, now as Appellate Rule 1612, rather than Chapter 13 reveals that the petitioning party is entitled to review as of right. *Id.* at 28-29. N.E.M. also notes that with the renumbering came a small but meaningful change of language: where Rule 1770 stated that a juvenile "may

---

[8] Both *D.W.* and *K.M.-F.* involve Rule 1770. Former Rule 1770 and Rule 1612 are substantially similar except to the extend we discuss infra.

seek review" of an out-of-home placement by filing a petition, Appellate Rule 1612 states that a juvenile "may file a petition" for the review afforded by that Rule. *Id.* at 29.

N.E.M. also emphasizes that when appellate review is discretionary, this Court and the General Assembly have made it that clear through the use of explicit language. By way of example, he points to the fact that filings under Chapter 13 are called "petitions for permission to appeal," and that Section 9781(b) of the Sentencing Code expressly provides that to challenge the discretionary aspects of a sentence, a party must file a petition for allowance of appeal which "may be granted at the discretion of the appellate court." *Id.* at 30. N.E.M. cites the complete lack of such language in Appellate Rule 1612 as support for his contention that the review provided for under it is mandatory. He also bolsters his argument with the intent behind Appellate Rule 1612, which this Court identified as establishing an expedited appeals process for dispositional orders placing a child adjudicated delinquent out of the home. *Id.* at 31 (citing Supreme Court Final Report on Implementation of Recommendations of Interbranch Commission on Juvenile Justice, 4/8/2013, at 2).

Turning to the second aspect of his argument, N.E.M. asks the Court to hold that the Superior Court is required to provide a written decision in support of its disposition of an appeal filed pursuant to Appellate Rule 1612. He contends that meaningful review can be accomplished through memorandum decisions or the adoption of the juvenile court's opinion when that opinion is sufficiently detailed.[9] *Id.* at 37.

The Commonwealth is aligned with N.E.M.'s position. It agrees that the Superior Court is required to perform an expedited review of out-of-home placements when a Rule 1612 petition for specialized review is filed. The Commonwealth adds to N.E.M.'s

---

[9] In this regard, N.E.M. broadly asks that we instruct the intermediate appellate court on its obligations when adjudicating a petition for specialized review under Appellate Rule 1612. The circumstances of this case and the Superior Court's specific error form the limit of what is encompassed in the allocatur grant.

argument by drawing our attention to Rules of Juvenile Court Procedure 512 and 612, which refer to review pursuant to Rule 1612 as "available."[10]  The Commonwealth finds this characterization significant, arguing that the use of "available" "denotes the presence of a right, not merely an opportunity subject to the court's discretion[,]" because this Court has used that term in connection with inalienable rights.  Commonwealth's Brief at 12-13 (citing this Court's description of the right to remain silent in custodial interrogations "as the 'availability of the privilege'" in *Commonwealth v. Medina*, 227 A.2d 842, 843 (Pa. 1967), and the federal right to a jury trial under the Fair Labor Standards Act and the Age Discrimination and Employment Act "as a right that is available to litigants" in *Wertz v. Chapman Tp.*, 741 A,2d 1272, 1278 (Pa. 1999)).  Thus, it contends that the use of "availability" in the juvenile court procedural rules was intentional and denotes that Rule 1612 review is a right held by all juveniles placed outside of the home.  *Id.*  The Commonwealth also highlights a portion of the Commission Report that recommended that the review process be expedited because many placements are completed in 120 days or less.  *Id.* at 14-15.[11]

---

[10]  In point of fact, it is the comments to Rule 512 and 612 that contain the language to which the Commonwealth directs our attention, not the Rules themselves.  *See* Pa.R.J.C.P. 512, cmt. ("The court should also explain to the juvenile the availability of review of the out-of-home placement pursuant to Pa.R.A.P. [1612]"); Pa.R.J.C.P. 612, cmt. ("If a change in disposition results in an out-of-home placement, then the court should also explain to the juvenile the availability of review of the out-of-home placement pursuant to Pa.R.A.P. 1612").

[11]  Three amicus briefs were received.  The Juvenile Law Center, in collaboration with several other Pennsylvania-based advocacy groups and experts, filed a brief highlighting that out-of-home placement of juveniles in Pennsylvania is 13% higher than the national average; such placement disproportionally affects Black and Hispanic juveniles; there is a high level of violence in out-of-home placement facilities; and that trauma suffered in placement facilities disrupts juveniles' transition into adulthood.  *See* Amicus Curiae Brief of Juvenile Law Center, et. al., at 13-22.  The Education Law Center argued that the education provided in out-of-home facilities is "vastly inferior," and that juveniles routinely struggle to stay on track to graduate once they are released from these placements. (continued…)

**Analysis**

The opinions that the Superior Court has issued addressing the specialized review for out-of-home juvenile placements reveal its understanding that whether to grant these petitions is a matter of its discretion. *See D.W.*, 220 A.3d at 574 ("We grant expedited review and affirm."); *K.M.-F.*, 117 A.3d at 352 (stating that the petition for review was granted and affirming the juvenile court's order). The orders that the court issued in the present appeals reveal the same, as they deny N.E.M.'s petitions for specialized review without mention of the juvenile court order for which review was sought. We agree that the Superior Court has misinterpreted its obligation in connection with these petitions for specialized review because the review of the out-of-home placement decision is a right, not an option.

The rules of statutory construction apply to the interpretation of our rules of appellate procedure. *See* Pa.R.A.P. 107. As such, we do not review appellate rules in a vacuum but in the context in which they lie. *See Gavin v. Loeffelbein*, 485, 205 A.3d 1209, 1221 (Pa. 2019). Further, while we must give effect to the plain language of the provision under consideration when that language is clear and free from ambiguity, *id.*, as important is that we pay equal attention to what is not said. *Int. of L.J.B.*, 199 A.3d 868, 875 (Pa. 2018) (quoting *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001)).

---

Amicus Curiae Brief of Education Law Center at 13-19. The Allegheny County Public Defender's Office illustrates its argument in support of N.E.M. by cataloging the disparate responses it has received from the Superior Court to petitions seeking Rule 1612 specialized review, from published opinions to terse per curiam orders, pointing out what it perceives as unfair inconsistency. Amicus Curiae Brief of Allegheny County Public Defender's Office at 10-15. The Defender's Office joins N.E.M. in arguing that a per curiam order with no explanation "can **never** be enough" to constitute meaningful appellate review. *Id.* at 16-17 (emphasis in the original).

Where appellate review is a matter of discretion, we have crafted our rules to clearly reflect that discretion. Chapter 13 of our Rules of Appellate Procedure is dedicated to the form and procedure for interlocutory appeals by permission. Rule of Appellate Procedure 1311, titled "Interlocutory Appeals by Permission," emphasizes that a party filing a petition under that rule is asking the appellate court to take up the appeal. It provides that "an appeal may be taken by permission" from certain kinds of orders and that a party can seek review of an interlocutory order by filing a petition for permission to appeal in the appellate court. Pa.R.A.P. 1311(a),(b). The concept of requesting permission from an appellate court to hear an appeal demonstrates the conditional nature of the appeal. By way of further example, Rule of Appellate Procedure 1112 provides that "[a]llowance of an appeal from a final order of the Superior Court or the Commonwealth Court may be sought by filing a petition for allowance of appeal with the Prothonotary of the Supreme Court[.]" Pa.R.A.P. 1112(b). The discretionary nature of review under Rule 1112 is explicit. Missing from Appellate Rule 1612 is any mention of a party seeking permission or the court granting allowance as reflected in other rules of appellate procedure. The absence of such language reveals our intent. *Int. of L.J.B.*, 199 A.3d at 875. The Superior Court here was without the discretion or authority to deny N.E.M.'s petitions for specialized review.

The placement of Appellate Rule 1612 in Chapter 16 of our Rules of Appellate Procedure is further evidence of the mandatory nature of this specialized review. As identified by N.E.M., when this Court reorganized our Rules of Appellate procedure in 2020, we did not relocate Rule 1770 to Chapter 13, which governs interlocutory appeals by permission, but we moved it to Chapter 16, the purpose of which is to provide a "procedure for appellate review of certain discrete issues." Pa.R.A.P. 1601. This rule controls how appellate review will be afforded, not how a party can seek permission to

appeal. The separation of appeals placed in Chapter 16 from the permissive appeals consigned to Chapter 13 was intentional. Had we intended the review afforded by Appellate Rule 1612 to be discretionary, it would have been placed in Chapter 13.

Even if the text of Appellate Rule 1612 were viewed as ambiguous, our conclusion would not change. Where the language is ambiguous or unclear, we may turn to other considerations, such as the circumstances under which the provision was enacted. 1 Pa.C.S. § 1921(c)(2). The parties are correct that the review provided for by Appellate Rule 1612 was one of the measures this Court took in the wake of the Luzerne County "kids for cash" scandal. Following the revelation of the corruption in the Luzerne County juvenile justice system, the Commission was created. Supreme Court Final Report on Implementation on Recommendations of the Interbranch Commission on Juvenile Justice, 4/8/2013, at 1 ("Final Report"). Following its exhaustive work, the Commission authored the Commission Report that suggested various measures to address what occurred in that county. From that report, this Court implemented a series of rules and procedures "to prevent what occurred in Luzerne from ever occurring again in the juvenile justice system in Pennsylvania." *Id.*

Among the measures adopted were requirements that a juvenile court judge place on the record the findings of fact and conclusions of law following an adjudication that results in an out-of-home disposition and that the juvenile judge consider the least restrictive out-of-home placement option that is consistent with the protection of the public and the juvenile's best interests. *Id.* at 2. As discussed more fully at the outset of this opinion, these requirements were enshrined in Rule 512, which governs the juvenile court's conduct in a dispositional hearing, and Rule 515, which dictates what information must be included in dispositional orders. *See* Pa.R.J.C.P. 512, 515.

The Court also instituted "an expedited appeal process for judicial orders of disposition following an adjudication of delinquency where a juvenile is removed from his or her home." Final Report at 2. The Commission found that expedited review of out-of-home placements would be crucial to remediating and safeguarding against the problems that took root in Luzerne County. It advised that for appellate review to be meaningful, the review must be completed before the placement ends. Commission Report at 56. Noting that many dispositions terminate within 120 days, the Commission endorsed the creation of an appeal process that would ensure the final adjudication of an appeal within ninety days of the date the appeal is filed. *Id.* It suggested that this be accomplished by a collaboration between our Appellate Rules Committee and our Juvenile Court Rules Committee to create either an expedited review process or a process that provides expedited review of certain determinations, including an adjudication of delinquency that removes a child from the home. *Id.*[12]

These are the conditions under which the appeal procedure established in Appellate Rule 1612 was developed. In our report, we stated that Appellate Rule 1612 establishes an appeal process to occur in an expedited fashion. Final Report at 2. Thus, consideration of the Rule's provenance demonstrates that Rule 1612 review is afforded to a juvenile as of right. There is no other interpretation that squares with our statement in the note to Rule 1612 that "[t]his rule provides a mechanism for the expedited review of an order of out-of-home placement entered pursuant to [Rule] 515", or our statement in the comment to Rule 512 that the juvenile court "explain to the juvenile the availability of review of the out-of-home placement[.]" *See* Pa.R.A.P. 1612, Note; Pa.R.J.C.P. 512,

---

[12] The other instances for expedited review the Commission suggested were the transfer of a case to criminal court and the transfer of a case from criminal court, or the denial of a request for either. Commission Report at 56. In response, we adopted Rule of Juvenile Court Procedure 337 and amended Rules of Juvenile Court Procedure 200 and 404. *See* Final Report at 2.

Cmt. The purpose of the Rule would be defeated if the Superior Court could decide whether to entertain the appeal.

## The Circumstances of This Case

The unfortunate reality is the safeguards built into the Juvenile Court Procedural Rules and the Rules of Appellate Procedure utterly failed N.E.M. The problems began at the adjudicatory hearing when the juvenile court refused to allow N.E.M. to withdraw his admission and refused to receive evidence or allow N.E.M. to be heard. N.T., 7/1/2022 at 16-18. The egregious errors continued in the subsequent dispositional hearing. Rule 512 requires the juvenile court to receive oral or written evidence from the parties and to allow the juvenile to be heard at the dispositional hearing. *See* Pa.R.J.C.P. 512(A)(1)-(2). The juvenile court denied N.E.M.'s requests for both. N.T., 7/11/2022, at 6-8. The court did not make the requisite comprehensive statement that includes findings of fact and conclusions of law, its disposition, and the reasons for the disposition. Nor did it explain why out-of-home placement was the least restrictive placement consistent with the protection of the public and best suited to serve N.E.M.'s treatment, rehabilitation, supervision and welfare. *Contra* Pa.R.J.C.P. 512(D). The complete transcript of the hearing contains barely over four pages of dialogue, the substance of which consists entirely of counsel for N.E.M. and the Commonwealth urging the juvenile court to reconsider its rejection of their agreement. In response the court stated only that the agreement was "not appropriate" because "[i]t's a carjacking and he punched a man in his face[.]" N.T., 7/11/2022, at 8.

The juvenile court took no steps to remedy its utter failure to adhere to the requirements of Rule 512 at the subsequent dispositional hearing. For instance, the court refused to accept a handwritten letter from N.E.M., even though Rule 512 requires the court to give the juvenile an opportunity to be heard and the court previously had denied

N.E.M. that opportunity. N.T., 8/11/2022 at 8. It made no effort to comply with the requirement for an on-the-record statement concerning N.E.M.'s disposition. The entirety of the court's explanation was its statement that N.E.M. was going to be "committed to the state with appropriate services[,]" still with no clarification as to why out-of-home placement was appropriate. Compounding these errors, after N.E.M. filed his petition for specialized review, the juvenile court ignored the requirement of Appellate Rule 1612(f), the fail-safe provision to ensure that proper consideration has been given to the out-of-home placement and that the Superior Court has an adequate record for review, as it did not file a statement of the reasons for its determination.[13]

As a result, the Superior Court had nothing before it from which it could have performed the specialized review provided for by Appellate Rule 1612. Given its obligation to consider the petition, it should have ordered the juvenile court to author an opinion compliant with Rule 515 immediately so that N.E.M. would have had the benefit of the expedited review of his out-of-home placement to which he was entitled.[14]

N.E.M. asks that we direct the Superior Court to render written decisions (and not bald orders) when undertaking the specialized review of out-of-home placements. This case illustrates why that would be inappropriate as a blanket rule. Here, the appropriate outcome of the initial review was a remand to the juvenile court. Moreover, we are confident that the Superior Court understands that the fundamental purposes of

---

[13] The first time the juvenile court explained its reasons for N.E.M.'s out-of-home placement was in its January 9, 2023, opinion, issued in response to N.E.M.'s Rule 1925(b) statement of matters complained of on appeal. *See* Pa.R.A.P. 1925; Juvenile Court Opinion, 1/9/2023, at 3. The explanation provided in that opinion does not meet the standards required by Rule 512(D).

[14] Appellate Rule 1612 provides **expedited** review. Neither party challenges the timeliness of the Superior Court's consideration of the petition for review in this case. Although the timeframe for the Superior Court's action does not appear in a published Internal Operating Procedure, in this case, the Superior Court issued its denial within thirty-seven days of the filing of the Rule 1612 petition.

intermediate appellate review are to promote adherence to the rule of law, correct lower court errors and assist in the development of the law. To achieve these purposes, appellate courts must provide explanations for their rulings.

While always pertinent, the role of the Superior Court in reviewing out-of-home placements is of particular salience. As time passes, memory of the injustices that occurred as a result of lax out-of-home placement protocols fades. The Superior Court's appellate review function in such cases is the protection against a reoccurrence of those injustices. The issuance of decisions that promote uniform application of the juvenile court rules controlling out-of-home placements buttress the work of juvenile court judges in our Commonwealth.[15]

## Conclusion

Today we hold that the expedited review provided for by Appellate Rule 1612 is afforded to juvenile petitioners as of right. The Superior Court lacks the discretion to decide whether to grant or deny these petitions for specialized review. Thus, it was error for the Superior Court to deny N.E.M.'s petitions for specialized review filed pursuant to Appellate Rule 1612. Further, when presented with a grossly deficient record that precludes the possibility of the contemplated review, as was the case here, the Superior Court should remand for an opinion from the juvenile court to be filed with urgency.

Chief Justice Todd and Justices Dougherty, Wecht, Mundy, Brobson and McCaffery join the opinion.

Justice Dougherty files a concurring opinion in which Justices Mundy and Brobson join.

---

[15] Reliance by the Superior Court on well-crafted Rule 515 decisions for affirmance of an out-of-home placement decision can serve this purpose.